**James H. HARRIS, Plaintiff,**

v.

**Sanger B. POWERS, J.J. Nuter, Gene R. Dobberstein, Donald R. Schneider, Defendants.**

**No. 73–C–340.**

United States District Court,
W. D. Wisconsin.

Aug. 10, 1981.

**112**

Paul R. Norman, Madison, Wis., for plaintiff.

Steven C. Underwood, Asst. Atty. Gen., Madison, Wis., for defendants.

ORDER

CRABB, Chief Judge.

This is a civil action for monetary damages brought pursuant to Title 42 of the United States Code, Section 1983, against defendants Sanger B. Powers, administrator of the Division of Corrections, Wisconsin Department of Health & Social Services; Jerome J. Nuter, district supervisor, Bureau of Probation and Parole, Division of Corrections, Wisconsin Department of Health and Social Services; Donald Schneider, hearing examiner, Wisconsin Department of Health and Social Services; and Gene Dobberstein, probation and parole agent, Bureau of Probation and Parole, Division of Corrections, Wisconsin Department of Health and Social Services. Plaintiff alleges that defendants

violated his constitutional rights by the manner in which they revoked his probation in 1973. Specifically, plaintiff contends that defendants deprived him of his Fourteenth Amendment right to procedural due process in his probation revocation proceedings, "including the right to have [the preliminary hearing and the final] hearing concerning the charges conducted at or reasonably near the place of the alleged probation violation, and the right to present witnesses in his behalf." [1]

Defendants' answer raises several defenses, including the defense of absolute, quasi-judicial immunity. The defense of absolute immunity is premised upon the contention that defendants were acting in a quasi-judicial capacity when they denied plaintiff's requests to hold the preliminary hearing and final revocation hearing in Tennessee, the site of the alleged probation violation. An evidentiary hearing concerning the defense was held on June 4th and 5th, 1981. Thereafter, defendants Nuter and Schneider filed a post-hearing brief in which they assert the defense of absolute, quasi-judicial immunity.[2]

The touchstone for an inquiry concerning absolute, quasi-judicial immunity is *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), and the analytical framework developed therein. In *Butz*, in a multi-part ruling, the Court identified the scope of absolute immunity accorded federal executive officials. First, the *Butz* Court held that federal officials are accorded no higher degree of immunity from liability than that accorded to state officials sued for constitutional infringement. Second, the Court ruled that "federal executive officials exercising discretion are entitled only to the qualified immunity specified in *Scheuer* [*v. Rhodes*, 416 U.S. 232, 94 S.Ct.

1683, 40 L.Ed.2d 90 (1974)] subject to those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of public business." *Butz*, 438 U.S. at 507, 98 S.Ct. at 2911. And finally, the Court held that executive officials performing adjudicatory functions are subject to an exceptional circumstance, which qualifies them for absolute, quasi-judicial immunity.

In reaching this latter holding, the *Butz* Court undertook a "considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it," *Id.* at 508, 98 S.Ct. at 2912, quoting *Imbler v. Pachtman*, 424 U.S. 409, 421, 96 S.Ct. 984, 990, 47 L.Ed.2d 128 (1976). Additionally, the Court reviewed the structure and procedures of federal administrative agency adjudication to determine whether they shared "enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." *Butz*, 438 U.S. at 513, 98 S.Ct. at 2914. The Court concluded that officials "subject to th[e] restraints [designed to ensure their independent judgment] and performing adjudicatory functions within a federal agency are entitled to absolute immunity from money damage liability for their judicial acts." *Id.* at 514, 98 S.Ct. at 2915.

Although the *Butz* opinion concerned federal agency adjudication, the Court's discussion of the scope of immunity for state officials sued under 42 U.S.C. § 1983, and the finding that the scope of immunity for federal officials is comparable, indicates that the *Butz* analysis is applicable in determining the scope of immunity to be accorded state officials performing adjudicatory functions.

---

1. In a 1975 decision granting plaintiff's petition for a writ of habeas corpus, the Wisconsin Supreme Court held that plaintiff's due process rights under the United States Constitution were violated by the state's failure to provide him with either a preliminary or a final revocation hearing in Tennessee, the site of the alleged probation violation. *State ex rel. Harris v. Schmidt*, 69 Wis.2d 668, 230 N.W.2d 890 (1975).

2. The defense of absolute immunity was initially raised by each of the four defendants. However, defendants Powers and Dobberstein do not assert the defense in the post-hearing brief. Accordingly, I understand defendants Powers and Dobberstein to have waived the defense. This opinion considers the defense only as it has been asserted by defendants Nuter and Schneider.

Defendants Nuter and Schneider submit that plaintiff's probation revocation hearing was an adjudicatory hearing with many of the characteristics and safeguards of the judicial process emphasized in the *Butz* decision.[3] They contend that they performed adjudicatory functions at the hearing, and assert that, as a result, they are entitled to absolute immunity for their acts concerning the location of plaintiff's probation revocation hearings.

Plaintiff counters this argument by arguing that the revocation proceedings were not formally subject to legal safeguards and restraints; that the defendants' challenged acts were not taken in the performance of adjudicatory functions; that the challenged acts do not qualify as judicial acts; and that the policy rationale for quasi-judicial immunity does not apply to defendants' challenged acts. In support of these latter contentions, plaintiff emphasizes that the *Butz* Court states a multiple party inquiry with respect to quasi-judicial immunity: "persons *subject to th[e] restraints* [designed to ensure their independent judgment] *and performing adjudicatory functions* within a federal agency are entitled to absolute immunity from money damage for their *judicial acts.*" *Butz,* 438 U.S. at 514, 98 S.Ct. at 2915 (emphasis supplied). In light of the specific language in the *Butz* opinion, and the nature of the specific acts challenged in plaintiff's complaint, I believe that the immunity issue here involves more than a review of the judicial characteristics and safeguards attendant to plaintiff's probation revocation hearing. This court must determine whether defendants' actions were taken in the performance of adjudicatory functions; whether the adjudicatory process shares judicial characteristics and safeguards; and whether defendants' actions, concerning the locations of the hearings, were judicial acts.

■ Few courts have had occasion to conduct a comparable multiple part inquiry. Although several post-*Butz* opinions have discussed the scope of immunity with respect to parole or probation revocation hearings, the cases have focused on challenges to acts dissimilar to those challenged here, *Sellars v. Procunier,* 641 F.2d 1295 (9th Cir. 1981) (parole board member entitled to absolute immunity for acts of adjudication in specific cases), or have not included a rigorous application of the "functional comparability" test of *Butz, Fowler v. Cross,* 635 F.2d 476 (5th Cir. 1981) (parole commission member and employee entitled to qualified immunity, if any, for deprivation of individual's constitutional right to a prompt on-site preliminary parole revocation hearing). Similarly, few post-*Butz* opinions have had occasion to consider the meaning of "performing adjudicatory functions" or "judicial acts" with respect to specific acts taken outside the formal adjudication process.[4] However, several pre-*Butz* opinions provide some guidance on these questions. In *Thompson v. Burke,* 556 F.2d 231 (3rd Cir. 1977), the court applied an analytical framework similar to the framework subsequently endorsed in *Butz,* and ruled that a state parole officer's duties may be distinguished as adjudicatory, or non-adjudicatory, and that absolute immunity attached to the former duties, not the latter.[5] *See also Jones v. Johnson,* 402

---

**3.** Defendants contend that the proceedings were adversarial in nature; that they were before a trier of fact who was authorized to make or recommend decisions; and that they permitted plaintiff to present his case by oral or documentary evidence.

**4.** In *Spaulding v. Nielsen,* 599 F.2d 728 (5th Cir. 1979), the Fifth Circuit Court of Appeals granted *quasi-prosecutional* immunity to a state probation officer for activities involved in preparing and submitting a presentence report in a criminal case. The court explicitly limited its holding to the facts of the case, stating that "[we] do not decide whether immunity will

shield probation officers from civil liability for official activities apart from the presentence report process." *Id.* at n. 2.

**5.** In *Thompson,* a state parolee sued several members of the Pennsylvania Parole Board under § 1983 violation of procedural due process. The parolee alleged that he had a meeting with parole board member Jefferson; that this was the only meeting provided; and that this meeting failed to comply with the hearing requirement set out in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The court, citing other federal court decisions, ruled that "No doubt can be entertained that proba-

·F.Supp. 992 (E.D.Pa.1975) (parole board members' failure to perform ministerial duty is not protected by immunity). Considered in tandem with the *Butz* opinion, these cases suggest that adjudicatory functions and judicial acts are identifiable, and distinguishable from other acts in two ways. First, an agency official's adjudicatory functions and judicial acts are accompanied by certain characteristics of the judicial process: there is an adversarial hearing with the official trier of fact insulated from political influence; each party is entitled to present his or her case by oral or documentary evidence; the transcript of testimony and exhibits with pleadings constitutes the exclusive record for decision, and the parties are entitled to know findings and conclusions on all of the issues of fact law or discretion presented on the record. *Butz*, 438 U.S. at 513, 98 S.Ct. at 2914. Second, and as a consequence of these characteristics, an agency official's adjudicatory functions or judicial acts involve some judgmental or policy-making act. That is, by definition, the quasi-judicial function requires the official to review and consider the information presented by the adversaries, and then exercise discretion in making a decision. By contrast, a non-adjudicatory function, or non-judicial act is more like a ministerial act. In the latter instance, the agency official's "function is purely mandatory in accordance with the direct and positive legal authority applicable to the individual's position, and [there is no] discretion involved in its performance...." *Jones v. Johnson*, 402 F.Supp. at 998–999, and cases cited therein.

### Actions of Defendants

The defendants' respective actions must be examined pursuant to this inquiry. Defendant Nuter's actions may be considered in two parts: first, his initial decision to schedule the preliminary hearing at the Kenosha jail; second, his decision at the preliminary hearing to deny plaintiff's motion to relocate and reschedule the hearing.

▇ Defendant Nuter was the hearing magistrate at plaintiff's preliminary probation hearing. As the hearing magistrate, he scheduled the preliminary hearing at the Kenosha County jail. This decision was contrary to the Division of Corrections' own written policy which provided that the magistrate should "ordinarily" hold the hearing in the county where the alleged violation occurred.[6] Nuter made the scheduling decision *sua sponte*, and testified at the evidentiary hearing that he gave no consideration to the location of the hearing. Plaintiff was not afforded any hearing, adversarial or otherwise, concerning this initial location decision. Furthermore, once the hearing was scheduled, plaintiff was not afforded any opportunity to object or to challenge the location decision.

Subsequent and pursuant to Nuter's initial decision, the preliminary hearing was held at the Kenosha jail. Although some written procedures concerning the conduct of the hearing existed, the procedures were not imposed by statute or administrative rule. At the hearing, plaintiff's counsel filed a motion to transfer the hearing to Tennessee. Nuter overruled the motion on the ground that he had no authority to hold the preliminary hearing outside the state.

In light of these facts, I find that Nuter's acts concerning the site of the preliminary hearing cannot be characterized as acts pursuant to the performance of an adjudicatory function, or as acts within an adjudicatory process, or as judicial acts. As discussed above, the *Butz* opinion indicates that agency adjudication is quasi-judicial when it is structured to preserve the independence of the hearing examiner, *Butz*, 438 U.S. at 513,

---

tion officers...are entitled to quasi-judicial immunity when engaged in adjudicatory duties," 566 F.2d at 236, and remanded the case to the district court. The district court was directed to produce a more adequate record concerning the meeting and the role of Jefferson concerning the granting of the hearing contemplated by *Morrissey*. The court stated that if Jefferson's failure to provide the hearing was adjudicatory, he would be entitled to quasi-judicial immunity and thus relieved of any liability. *Id.* at 239.

**6.** Defendant Nuter testified that the policy was a guideline only.

98 S.Ct. at 2914, and contains specific characteristics, *viz*, the adjudication must be adversarial in nature, and afford each party an opportunity to present his or her case by oral or documentary evidence. *Id.* Nuter's initial decision was made in the absence of a formal structure preserving his independence, and was not made pursuant to an adversarial proceeding, or pursuant to the presentation of evidence. Additionally, the decision did not reflect deliberation by Nuter. The decision was ministerial, not discretionary. Accordingly, Nuter's initial decision concerning the hearing fails to qualify as a judicial act.

■ Nuter's second action concerning the hearing site, made at the preliminary hearing, also fails to qualify as a quasi-judicial act. Although the second decision was made in the context of an adversarial proceeding, it was made in the absence of a formal structure preserving the examiner's independence. Furthermore, the decision was not a judicial act. At the evidentiary hearing, Nuter testified that he believed he had no authority to relocate the hearing in Tennessee. He testified that this belief reflected his understanding of the dictates of an inter-state transfer agreement. Nuter's testimony indicates that he believed his decision denying plaintiff's motion was mandated in accordance with direct legal authority. His decision was ministerial, rather than discretionary. Accordingly, notwithstanding the context of an adversarial hearing, Nuter does not qualify for quasi-judicial immunity.

Defendant Schneider was the hearing examiner at plaintiff's final probation revocation hearing. As the hearing examiner, he received a request from an official in the Division of Corrections for an administrative hearing concerning plaintiff's alleged probation violation. Schneider subsequently notified plaintiff that his hearing was to be held at the Kenosha County jail. This scheduling was pursuant to the general practice of scheduling hearings at the county jail where the person was being detained. There were no written procedures concerning the conduct of the hearing.

Subsequent to this scheduling, plaintiff's counsel wrote defendant Sanger B. Powers, requesting that the revocation hearing be transferred to Tennessee, the site of the alleged probation violation. Plaintiff's counsel sent a copy of the letter to Schneider. Schneider responded to the letter of plaintiff's counsel because he had authority over matters concerning plaintiff's final revocation hearing. Schneider advised plaintiff's counsel that there was no practical way to hold the administrative hearing in Tennessee. At the evidentiary hearing, Schneider testified that he believed that he had no authority to go outside the state to hold the hearing. He testified that this belief reflected his understanding of operative procedures.

■ In light of these facts, I find that Schneider's acts concerning the site of the final revocation hearing cannot be characterized as acts pursuant to the performance of an adjudicatory function, or as acts within an adjudicatory process, or as the rendering of a judicial act. Like Nuter's initial action, Schneider's actions were made in the absence of a formal structure preserving his independence, and were not made pursuant to an adversarial proceeding, or pursuant to the presentation of evidence. Furthermore, Schneider testified that he believed that he had no authority to relocate the hearing in Tennessee. Schneider's testimony indicates that he believed his decision in denying plaintiff's request was mandated by direct legal authority. His action, like Nuter's, was ministerial rather than discretionary. Thus, he does not qualify for quasi-judicial immunity.

The conclusion that Nuter and Schneider are not entitled to absolute or quasi-judicial immunity for the complained of acts is consistent with the policy underlying the grant of absolute immunity to certain executive officials. Absolute immunity for executive officials is an exception to the usual rule of qualified immunity. *Butz*, 438 U.S. at 508, 98 S.Ct. at 2911. The rationale for absolute immunity in some instances turns upon the importance of preserving the independent judgment of those officials performing judi-

cial-like functions. *Id.* at 514, 98 S.Ct. at 2914. Here, where the mandate of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), removed the officials' exercise of independent judgment with respect to the location of the probation revocation proceedings, the need for preserving independent judgment falls out. *See Jones v. Johnson*, 402 F.Supp. 992, 999 (E.D.Pa. 1975).

The narrowness of this conclusion concerning the scope of absolute, quasi-judicial immunity bears emphasis. Plaintiff does not challenge the ultimate decision to revoke his probation. I intimate no opinion as to the scope of immunity available for probation board officials who made that decision in an adjudicatory proceeding. The holding in this case is limited solely to Nuter's and Schneider's actions concerning the location of the probation revocation hearings.

One other point bears emphasis. In examining the specific nature of the defendants' acts, and considering whether such acts are discretionary or ministerial, I do not intimate that a comparable evaluation is applicable in examining the actions of judges. Judges are entitled to absolute immunity for acts done in the exercise of their judicial functions. *Butz*, 438 U.S. at 508–509, 98 S.Ct. at 2911–2912. Judges' judicial functions have been broadly defined. *See Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (state court judge's approval of a sterilization petition is a judicial act). The rule of absolute immunity for judges is in contrast to the general rule of qualified immunity for executive officials, and reflects an understanding that, by definition, the judicial acts of judges are distinguishable from the quasi-judicial acts of executive officials. As a result of that distinction, different inquiries apply to questions of judicial immunity. *Cf. Stump*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331, with *Butz*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895.

## ORDER

IT IS ORDERED that the affirmative defense of absolute immunity of defendants Nuter and Schneider is DENIED. The Clerk of Court is directed to schedule a status conference in this matter at which time counsel will be requested to advise the court whether they wish to stipulate to the dismissal of defendant Dobberstein, and how they wish to proceed further in this case.