**Douglas GREGORY, Plaintiff-Appellee,**

**v.**

**John J. THOMPSON, Defendant-Appellant.**

**No. 72–3000.**

United States Court of Appeals, Ninth Circuit.

July 2, 1974.

Rehearing Denied Aug. 14, 1974.

Robert Morrison (argued), Sierra Vista, Ariz., for defendant-appellant.

Roger C. Wolf (argued) of Risner, Wolf & Raven, Tucson, Ariz., for plaintiff-appellee.

## OPINION

Before WRIGHT, CHOY and SNEED, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Plaintiff Gregory sued for damages for violation of his civil rights under 42 U.S.C. § 1983. His complaint, supported by testimony in a trial to a jury in the District Court for the District of Arizona, was that he was subjected to an assault and battery by defendant Thompson, a justice of the peace, in the latter's courtroom. The court entered judgment on a jury verdict in the amount of $1,500 actual damages and $500 punitive damages.

On this appeal, Judge Thompson contends that two essential elements of a civil rights claim are lacking and that he should have the protection of the doctrine of judicial immunity. We reject both contentions and affirm the decision below.

Gregory, a former actor retired for disability, was 65 years of age when he injected himself into a minor traffic violation case involving Army Sergeant McCullough. The sergeant had pleaded guilty a week earlier, had been fined $25 by Judge Thompson, and was allowed time to pay the fine. Believing that the court had acted without jurisdiction and that the sentence was illegal, Gregory, accompanied by Sergeant McCullough, went to Judge Thompson's courtroom on a regular court day. In response to an inquiry from the judge, who was not then engaged in any other trial, Gregory said he would like to represent the sergeant.

Judge Thompson responded that a non-lawyer could not do so, and he either politely asked or emphatically told Gregory to leave the courtroom. Gregory's answer was, "O.K., you throw me out." The judge left his desk in the courtroom and did just that. It appears that he forced Gregory out the door, threw him to the floor in the process,

jumped on him, and began to beat him. The judge's secretary ran to the sheriff's office down the hall, and two deputy sheriffs came to Gregory's rescue.

Judge Thompson had been a justice of the peace in Arizona for eight years, following 23 years of military service. He is not a lawyer and has neither legal training nor a college degree. When called as a witness by plaintiff Gregory, he admitted that he may have pushed Gregory, "because he was disrupting the proceedings of the court." He testified, "I went around that desk to remove him from the courtroom sir." Judge Thompson claims he was sitting on top of Gregory only to prevent Gregory from banging his head on the wall, since Gregory appeared to be having an epileptic fit. The judge testified, however, that he could, and should, have asked someone in the courtroom to get the sheriff down the hall to remove Gregory from the courtroom.

Somewhat remarkably, the secretary who had been seated in the courtroom and one other bystander said they saw no assault. Nor did Sergeant Mc-Cullough. The jury, however, aided by photographs taken of Gregory shortly thereafter and the admissions made by Judge Thompson, concluded that an assault had indeed taken place and that Gregory had been injured.

Two issues confront us in this case: (1) Is plaintiff's claim cognizable under the Civil Rights Act [42 U.S.C. § 1983]? (2) Is defendant nevertheless shielded from liability by judicial immunity?

I

For Gregory's claim to be cognizable under the Civil Rights Act, he must establish that Judge Thompson was acting under color of state law and in so doing deprived him of some right, privilege, or immunity guaranteed by the Constitution or laws of the United States. 42 U.S.C. § 1983; Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

■ We hold that a state judicial officer is acting under color of state law when he evicts from his courtroom one who is there on court business. *See* McAlester v. Brown, 469 F.2d 1280 (5th Cir. 1972); Mullins v. Oakley, 437 F.2d 1217 (4th Cir. 1971).

■■ Judge Thompson contends that a Justice of the Peace violates no right protected by 42 U.S.C. § 1983 when he assaults a person in his courtroom. The contention lacks merit. It is well established that § 1983 provides a remedy for one who has been the victim of an assault and battery at the hands of a person acting under color of state law. Lucarell v. McNair, 453 F.2d 836 (6th Cir. 1972); Cohen v. Norris, 300 F.2d 24, 34 (9th Cir. 1962); *see* Jenkins v. Averett, 424 F.2d 1228, 1232 (4th Cir. 1970). The right violated by an assault has been described as the right to be secure in one's person, and is grounded in the due process clause of the Fourteenth Amendment. *See* Curtis v. Everette, 489 F.2d 516 (3d Cir. 1973); Johnson v. Glick, 481 F.2d 1028 (2d Cir. 1973); Reed v. Philadelphia Housing Authority, 372 F.Supp. 686 (E.D.Pa.1974). Gregory's complaint therefore sufficiently stated a claim cognizable under § 1983.

## II

■■ A seemingly impregnable fortress in American Jurisprudence is the absolute immunity of judges from civil liability for acts done by them within their judicial jurisdiction. Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).[1] The general rule, laid down over a century ago, is that judges are immune from suit for judicial acts within and even in excess of their jurisdiction even if those acts were done maliciously or corruptly; the only exception to this sweeping cloak of immunity exists for acts done in "the clear absence of all jurisdiction."[2] Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1871); *see* Lucarell v. McNair, 453 F.2d 836, 838 (6th Cir. 1972); Lynch v. Johnson, 420 F.2d 818, 820 (6th Cir. 1970); Agnew v. Moody, 330 F.2d 868, 870 (9th Cir.), cert. denied, 379 U.S. 867, 85 S.Ct. 137, 13 L.Ed.2d 70 (1964); Sires v. Coles, 320 F.2d 877 (9th Cir. 1963). Justices of the Peace, it is well established, fall within the protective ambit of the doctrine. Mississippi ex rel. Giles v. Thomas, 464 F.2d 156, 159–160 (5th Cir. 1972); Hurlburt v. Graham, 323 F.2d 723, 725 (6th Cir. 1963); Tate v. Arnold, 223 F.2d 782, 786 (8th Cir. 1955).

■ Judges may invoke the doctrine not merely in their defense at trial, but rather as a plea to bar the trial itself. This is justified, said Judge Learned Hand, because "to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." Gregoire v. Biddle, 177 F.2d 579,. 581 (2d Cir. 1949). If the essence of Judge Thompson's conduct is protected by immunity, therefore, it remains protected even if the plaintiff alleged that Thompson used manifestly excessive force. Any other rule would place a judge at the mercy of

1. Numerous critics of the doctrine of absolute immunity contend that its purpose—promoting principled and fearless decision-making—is adequately ensured without insulating judges from liability for malicious and corrupt acts. A standard similar to the "actual malice" standard of New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L. Ed.2d 686 (1964), has been suggested as an alternative. *See* Comment, Liability of Judicial Officers Under Section 1983, 79 Yale L. J. 322 (1969).

2. Examples of acts "in the clear absence" of jurisdiction include a judge's interference with judicial proceedings after he had disqualified himself from acting therein, *see* Spires v. Bottorff, 317 F.2d 273 (7th Cir. 1963), cert. denied 379 U.S. 938, 85 S.Ct. 343, 13 L.Ed.2d 349 (1964), and a judge's ordering a person sterilized totally without statutory authority. Wade v. Bethesda Hospital, 337 F.Supp. 671 (S.D.Ohio 1971).

a pleader's allegations. *See* Tenney v. Brandhove, 341 U.S. 367, 377, 71 S.Ct. 783, 95 L.Ed. 1019 (1951).

Rather, our inquiry must be to whether Judge Thompson acted in the clear absence of all jurisdiction. Appellant contends that a judge has the inherent power to maintain order in the courtroom and that he was exercising this power when he used force to evict Gregory from his courtroom. He claims, therefore, that his assault on Gregory was at most in *excess* of his jurisdiction, but certainly not in the clear absence of all jurisdiction.

■ This argument misses the mark. When courts have spoken of immunity for acts within the jurisdiction of a judge, they have declared that the doctrine insulates judges from civil liability "for acts committed within their *judicial* jurisdiction," or "for acts within [their] *judicial* role," Pierson v. Ray, 386 U.S. at 554, 87 S.Ct. at 1218, or for "their *judicial* acts." Bradley v. Fisher, 80 U.S. (13 Wall.) at 351. (Emphasis added.) Thus judicial immunity does not automatically attach to all categories of conduct in which a judge may properly engage, but only to those acts that are of a judicial nature.

■■ What constitutes conduct falling within that range must, in large part, be determined by looking at the purpose underlying the doctrine of judicial immunity. Official immunity, after all, "is not a badge or emolument of exalted office, but an expression of a poli-

cy designed to aid in the effective functioning of government." Barr v. Matteo, 360 U.S. 564, 572–573, 79 S.Ct. 1335, 1340, 3 L.Ed.2d 1434 (1959). Immunity is thought necessary to insulate judges from intimidation that might rob them of the independence so crucial to the public's interest in principled and fearless decision-making.

> [I]mmunity . . . "is not for the protection of benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." . . . It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

Pierson v. Ray, 386 U.S. at 554, 87 S.Ct. at 1218 (citations omitted).[3] The Supreme Court has made it clear that the doctrine of immunity should not be applied broadly and indiscriminately, but should be invoked only to the extent necessary to effect its purpose. *See* Doe v. McMillan, 412 U.S. 306, 319–325, 93 S. Ct. 2018, 36 L.Ed.2d 912 (1973).[4] We

---

3. *See* McCray v. Maryland, 456 F.2d 1, 3 (4th Cir. 1972):
 The rule is tolerated, not because corrupt or malicious judges should be immune from suit, but only because it is recognized that judicial officers in whom discretion is entrusted must be able to exercise discretion vigorously and effectively, without apprehension that they will be subjected to burdensome and vexatious litigation.

4. The Court concluded that the general doctrine of official immunity does not insulate

the Public Printer and the Superintendent of Documents from civil liability. The Court stated that this doctrine seeks to reconcile two important considerations:
 [O]n the one hand, the protection of the individual citizen against pecuniary damage caused by oppressive or malicious action on the part of officials of the Federal [or State] Government; and on the other, the protection of the public interest by shielding responsible governmental officers against the harassment and inevitable hazards of vindictive or ill-founded damage

also must look beyond the status of the party seeking immunity and consider the nature of the conduct for which immunity is sought. *See* C. M. Clark Insurance Agency, Inc. v. Maxwell, 156 U.S.App. D.C. 240, 479 F.2d 1223, 1227 (1973); McCray v. Maryland, 456 F.2d 1, 3–4 (4th Cir. 1972); Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358, 362 (1971), rev'd on other grounds, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973); Dodd v. Spokane County, 393 F.2d 330, 335 (9th Cir. 1968); Robichaud v. Ronan, 351 F.2d 533, 537 (9th Cir. 1965); Corsican Productions v. Pitchess, 338 F.2d 441, 444 (9th Cir. 1964); cf. Johnson v. Alldredge, 488 F.2d 820, 824 (3d Cir. 1973); Hampton v. City of Chicago, 484 F.2d 602, 608 (7th Cir. 1973), cert. denied, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974).

■ It is within a judge's power—indeed, it is his obligation—to "protect the sanctity and dignity of . . . courtroom proceedings. . . ." Mullins v. Oakley, 437 F.2d 1217, 1218 (4th Cir. 1971).[5] A judge's criminal contempt power provides him with the judicial muscle to cope with such situations, and the exercise of that power, clearly judicial in character, falls within the scope of the immunity doctrine. *See* McAlester v. Brown, 469 F.2d 1280, 1282 (5th Cir. 1972). It may even be necessary in an isolated instance to use physical force to preserve order. Though necessary, that does not mean the judge is immune. The decision to personally evict someone from a courtroom by the use of physical force is simply not an act of a judicial nature, and is not such as to require insulation in order that the decision be deliberately reached. A judicial act within the meaning of the doctrine may normally be corrected on appeal. *See* Pierson v. Ray, 386 U.S. at 554, 87 S.Ct. 1213. But when a judge exercises physical force in a courtroom, his decision is not amenable to appellate correction. More importantly, we cannot believe that the purpose of the judicial immunity doctrine—to promote "principled and fearless decision-making"—will suffer in the slightest if it is held that judges who physically assault persons in their courtrooms have no automatic immunity.

This case is analogous to Robichaud v. Ronan, 351 F.2d 533 (9th Cir. 1965). In considering the well-established absolute immunity of prosecuting attorneys acting as "quasi-judicial" officers of the court, we there held that when a prosecuting attorney performs acts ordinarily related to police activity, as opposed to judicial activity, judicial immunity is not warranted. Similarly, here Judge Thompson could have summoned a sheriff to escort Gregory from the courtroom; indeed, he concedes that is what

---

suits brought on account of action taken in the exercise of their official responsibilities.
Doe v. McMillan, 412 U.S. 306, 319, 93 S.Ct. 2018, 2028, 36 L.Ed.2d 912 (1973), quoting Barr v. Matteo, 360 U.S. 564, 565, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). Given these considerations, a court faced with deciding whether a particular official is protected by immunity must make "a discerning inquiry into whether the contributions of immunity to effective government in particular contexts outweigh the perhaps recurring harm to individual citizens. . . ." Doe v. McMillan, *supra*, 412 U.S. at 320, 93 S.Ct. at 2028. Such an inquiry, the Court stated, is not completed simply by finding that the disputed conduct is "within the outer perimeter" of an official's duties. *Id.* at 322, 93 S.Ct. 2018.

5. Section 6.3 of the American Bar Association Standards Relating to the Function of the Trial Judge (Approved Draft 1972) provides:
 The trial judge has the obligation to use his judicial power to prevent distractions from and disruptions of the trial. If the judge determines to impose sanctions for misconduct affecting the trial, he should ordinarily impose the least severe sanction appropriate to correct the abuse and to deter repetition. In weighing the severity of a possible sanction for disruptive courtroom conduct to be applied during the trial, the judge should consider the risk of further disruption, delay or prejudice that might result from the character of the sanction or the time of its imposition.

he should have done. Had he done so, and had the sheriff assaulted Gregory, the sheriff would not have been entitled to claim absolute immunity but only the defense that he was acting in good faith.[6] Judge Thompson's choice to perform an act similar to that normally performed by a sheriff or bailiff should not result in his receiving absolute immunity for this act simply because he was a judge at the time. As we held in Robichaud v. Ronan, "it seems neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Id.* at 536–537.

 However, like the prosecuting attorney in Robichaud v. Ronan, Judge Thompson should be able to claim a qualified immunity which would insulate him from civil liability if he acted in good faith even while using excessive force. *See also* Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

 The jury in the trial below was not specifically instructed that Judge Thompson was entitled to this good faith defense. The district judge instructed the jury, however, that it should find Judge Thompson liable only if it found that he used more than "reasonable force." The jury was further instructed to award punitive damages only if, after finding that Judge Thompson acted unreasonably, it also found him to have acted "maliciously or wantonly or oppressively." The jury returned a verdict against the judge for both actual and punitive damages. Since he could not have acted both in good faith and "maliciously or wantonly or oppressively," we see no reason to remand for a specific instruction on good faith.

Affirmed.

6. While we have said that those acting "at the direction of a judge . . . to whom they were immediately and directly responsible" would enjoy quasi-judicial immunity, Gillibeau v. City of Richmond, 417 F.2d 426, 429 (9th Cir. 1969) (dictum) that immunity attaches only insofar as the authorization to act extends. Moreover, any authorization to use excessive force could shield neither a judge nor bailiff, we suppose, since that authorization would be clearly outside the jurisdiction of the judge.