Darline J. **ANDERSON** and James Q. Anderson, Plaintiffs/Appellants,

v.

Jerald G. **BOYD**, Ass't Director, Oregon Interstate Compact, William Cogswell, Chairman, Oregon State Parole Board, Defendants/Appellees.

No. 82–3315.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 7, 1983.

Decided Aug. 30, 1983.

---

Michael D. Reynolds, Deputy Atty. Gen., Salem, Or., for defendants-appellees.

James Q. Anderson, Hermiston, Or., for plaintiffs-appellants.

Before SNEED, FARRIS, and CANBY, Circuit Judges.

FARRIS, Circuit Judge:

The district court dismissed the Andersons' section 1983 action on the ground that the defendant parole officials were absolutely immune from civil liability. The Andersons appeal. We affirm in part and reverse in part.

FACTS

On May 23, 1979, James and Darline Anderson, husband and wife, filed a *pro se* complaint under 42 U.S.C. § 1983 seeking damages and other relief against William Cogswell, Chairman of the Oregon State

Parole Board, and Jerald Boyd, Assistant Director of the Oregon Interstate Compact. The complaint alleged that the defendants were harassing the husband, a state prisoner on parole, in violation of various constitutional guarantees. Specifically, Anderson first challenged parole conditions which restricted his out-of-state travel and thereby caused him to be separated from his wife. He also alleged that he had repeatedly been arrested and placed on nonbail parole holds pending investigation of baseless charges of parole violations. Finally, he alleged that the defendants had knowingly repeated false statements to Idaho officials regarding his criminal record.

Cogswell and Boyd filed a motion for summary judgment, contending that their status as parole board officials conferred immunity from civil liability. Properly treating the motion as one to dismiss for failure to state a claim upon which relief might be granted, *see* 6 J. Moore, Federal Practice ¶ 56.11[2], the district court dismissed the Andersons' action on the ground that the defendants were entitled to absolute immunity under *Sellars v. Procunier*, 641 F.2d 1295 (9th Cir.1981), *cert. denied*, 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981).

ANALYSIS

■ In reviewing the propriety of a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), we take as true the allegations in the pleadings. *See Benson v. Arizona State Board of Dental Examiners*, 673 F.2d 272, 275 & n. 7 (9th Cir.1982). In addition, we liberally construe *pro se* complaints. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam). The absolute, quasi-judicial immunity of parole officials when they act "to grant, deny, or revoke parole," which we recognized in *Sellars*, 641 F.2d at 1303, would not extend to the knowing dissemination of false information concerning a parolee as alleged in the Andersons' complaint. The district court erred by dismissing that portion of the complaint containing these allegations.

In *Butz v. Economou*, 438 U.S. 478, 508–17, 98 S.Ct. 2894, 2911–2912, 2916, 57 L.Ed.2d 895 (1978), the Supreme Court accorded absolute immunity to executive branch hearing examiners, judicial officers, and attorneys acting in adjudicatory or prosecutorial capacities. The Court emphasized that an official derives the appropriate degree of immunity not from his or her administrative designation but by the function he or she performs. *Id.* at 511–12, 98 S.Ct. at 2913–2914.

■ We followed this reasoning in *Sellars* when we accorded parole officials this high level of immunity expressly in order to preserve the integrity of their decisions:

We believe that parole board officials perform functionally comparable tasks to judges when they decide to grant, deny, or revoke parole. The daily task of both judges and parole board officials is the adjudication of specific cases or controversies. Their duty is often the same: to render impartial decisions in cases and controversies that excite strong feelings because the litigant's liberty is at stake. They face the same risk of constant unfounded suits by those disappointed by the parole board's decisions.

Judges enjoy absolute immunity from civil rights suits in order to keep the judicial decision-making process pristine. As noted earlier, we expect and require the judge to be an impartial fact finder. When he or she weighs the merits of a case, we do not want the scales to be tipped by fear of litigation.

\*    \*    \*    \*    \*    .    \*

We believe that the same degree of protection must be accorded to the decision-making process of parole board officials. Just as the decision-making process of judges must be kept free from fear, so must that of parole board officials. Without this protection, there is the same danger that the decision-maker might not impartially adjudicate the often difficult cases that come before them [*sic*].

*Sellars*, 641 F.2d at 1303. Because parole officials perform an essentially judicial

function when considering parole applications, they are entitled to the absolute protection of quasi-judicial immunity when engaged in this activity.

However, this absolute immunity does not attach to the performance of duties not requiring the exercise of quasi-judicial discretion. Quasi-judicial immunity completely shields covered officials when they perform the functions which give rise to the need for absolute protection, even when the officials make egregious mistakes in carrying out these duties. But the absolute immunity recognized in *Sellars* extends no further than necessary to accomplish its purpose to insulate parole officials' adjudicatory decisions from potentially distorting influences, such as the threat of retaliatory lawsuits. *Sellars,* 641 F.2d at 1303. There is no reason to clothe actions taken outside an official's adjudicatory role with the absolute immunity tailored to the demands of that role. A parole official is no more entitled to absolute immunity for conduct not requiring the exercise of quasi-judicial discretion than is a judge or court official for nonjudicial duties or behavior. *See Richardson v. Koshiba,* 693 F.2d 911, 913–15 (9th Cir.1982) (members of Hawaii Judicial Selection Commission not absolutely immune for review of state judge's qualifications and decision not to reappoint him); *Gregory v. Thompson,* 500 F.2d 59, 63 (9th Cir.1974) (judge's use of physical force to evict person from courtroom nonjudicial act not clothed with absolute immunity); *Lopez v. Vanderwater,* 620 F.2d 1229, 1235–37 (7th Cir.1980) (judge's prosecutorial acts nonjudicial and unprotected by absolute immunity), *cert. dismissed,* 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980).

The Andersons' allegations encompass three distinct types of actions: imposition of parole conditions, execution of parole revocation procedures, and knowing dissemination of false information. The imposition of parole conditions is an integral part of a decision to grant parole. *Morrissey v. Brewer,* 408 U.S. 471, 478, 92 S.Ct. 2593, 2598–2599, 33 L.Ed.2d 484 (1972). "The essence of parole is the release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Id.* at 477, 92 S.Ct. at 2598. It follows that the defendants cannot be held liable for conduct relating to the imposition of parole conditions.

Similarly, the Andersons' allegations that Cogswell and Boyd, without reasonable justification, had James arrested and placed on parole holds pending investigation of purported parole violations cannot overcome the bar of quasi-judicial immunity. These actions directly related to the decision to revoke parole and are therefore protected by absolute immunity, as the district court held. *See Douglas v. Muncy,* 570 F.2d 499, 501 (4th Cir.1978).

However, the Andersons also alleged that Cogswell and Boyd knowingly circulated false statements concerning his criminal record to police agencies in the community to which he had moved, to Idaho parole officials, to the Idaho State Racing Commissioners, and to the Governor of Oregon, who was considering Anderson's request for commutation of his sentence. The district court held that the defendants were immune because they had relayed this information "in their official capacities and while making decisions related to revoking James Anderson's parole." It is not clear whether the district court believed either of these grounds sufficient standing alone.

The sharing of information upon which judgments are based is essential to effective group decision-making. The integrity of parole board decisions requires that members be free frankly to discuss official matters. Thus, the Andersons' contentions relating to the dissemination of information among parole board members fall within the sphere of a parole board member's quasi-judicial immunity. Similarly, a parole board member's recommendations to the governor concerning his power to commute are sufficiently entwined with the exercise of that quasi-judicial power to merit the protection of absolute immunity. The district court properly dismissed these portions of the Andersons' complaint.

However, the allegations concerning dissemination of information outside the immediate sphere of the parole board present a different question. Specifically, the Andersons allege that the defendants have distorted Anderson's criminal record, spread false rumors that he has committed additional, unsubstantiated murders, and greatly exaggerated his propensity toward violence. They contend that the transmittal of these falsehoods to members of the Idaho State Racing Commission resulted in the revocation of his racing license, thus destroying his ability to earn his living as a racehorse trainer. They contend also that the dissemination of this false information to local police authorities in the communities in which they have resided has resulted in continual harassment and financial and emotional hardship. Cogswell and Boyd argue that these allegations nevertheless fail to state a redressable claim because the pretrial order established that at all times relevant to the dispute they were acting within the course and scope of their employment as officials of the Oregon Parole Board and Interstate Compact, respectively.

As *Economou* and *Sellars* make clear, however, this fact does not dispose of the Andersons' contentions. These portions of the Andersons' complaint concern conduct which would relate at best to supervision of parolees and therefore not demand the exercise of quasi-judicial discretion. While Cogswell and Boyd may claim absolute immunity for those actions relating to their responsibility to determine whether to revoke parole, their immunity for conduct arising from their duty to supervise parolees is qualified. Executive officials may be accorded one degree of immunity for one type of activity and a different degree for a discrete function, *Richardson v. Koshiba*, 693 F.2d at 915 n. 11; *Thompson v. Burke*, 556 F.2d 231, 237–40 (3d Cir.1977); *Lokey v. Richardson*, 534 F.Supp. 1015, 1020 (N.D. Cal.1982), as may judges, *see Gregory*, 500 F.2d at 64; *Lopez*, 620 F.2d 1234–35.

■ Because the dissemination of information about a parolee to persons outside the parole board, even if a legitimate activity, does not relate to a parole official's duties in deciding "to grant, deny, or revoke parole," *Sellars*, 641 F.2d at 1303, absolute immunity does not extend to such conduct. *See Henzel v. Gerstein*, 608 F.2d 654, 658–59 (5th Cir.1979). Cogswell and Boyd are at most entitled to executive, good faith immunity for their alleged conduct in transmitting information about Anderson's criminal record to members of the Idaho State Racing Commission and local police authorities. *See Scheuer v. Rhodes*, 416 U.S. 232, 245–49, 94 S.Ct. 1683, 1691–1693, 40 L.Ed.2d 90 (1974); *Sellars*, 641 F.2d at 1300–01. The district court erred by dismissing these portions of the complaint.

■ Because the issue was neither raised in the district court nor adequately argued on appeal, we do not address the possibility of a distinction for purposes of immunity analysis between a member of a parole board, such as Cogswell, and an official of an interstate compact, such as Boyd. We note that the Oregon Uniform Act for Out-of-State Supervision, O.R.S. 144.610–144.620, authorizes no role for interstate compact officials in the granting or denying of parole and only a preliminary role for these officials in a determination to revoke, as the title suggests and the state concedes. In any case, we emphasize that the degree of immunity accorded should correspond not to an official's title but to the function which prompted the conduct at issue.

CONCLUSION

We affirm the district court's dismissal of those counts in the Andersons' section 1983 complaint relating to the imposition of parole conditions, the revocation of parole, and the dissemination of information to parole board officials and the governor. We reverse the dismissal of those portions of the Andersons' complaint alleging knowing dissemination of false information to the Idaho Racing Commission and local law enforcement officials and remand the cause to the district court for an evidentiary hearing to determine whether Cogswell and Boyd acted in good faith and are thus entitled to a more limited executive immunity.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.