Phillip REED, Lance Ruthe, Eric Yoshimura, Cecilio Asuncion, Frederick Curtis, individually and as representative of the Class of all persons similarly situated, Plaintiffs,

v.

George IRANON, Individually and in his capacity as Director, Department of Public Safety, State of Hawai'i; Eric Penarosa, Individually and in his capacity as Corrections Divisions Head, Department of Public Safety and Housing, State of Hawai'i; Claudio Suyat, Individually and in his capacity as Chairman, Hawai'i Paroling Authority; Fetulima Tamasese, and Mary Juanita Tiwanak, Individually and in their capacity as Members, Hawai'i Board of Paroling Authority and the State of Hawai'i, Defendants.

Civil No. 95–00939 DAE.

United States District Court,
D. Hawai'i.

Sept. 13, 1996.

Michael Jay Green, John Rapp, Honolulu, HI, for plaintiffs.

Kathleen Mari Sato, Office of the Attorney General, State of Hawai'i, Honolulu, HI, for defendants.

*ORDER GRANTING DEFENDANTS' MO- TION FOR SUMMARY JUDGMENT AND DISMISSING REMAINING STATE LAW CLAIMS WITHOUT PREJUDICE, AND DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AS MOOT*

DAVID ALAN EZRA, District Judge.

The court heard Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Class Certification on September 9, 1996. Michael Jay Green, Esq., and John Rapp, Esq. appeared on behalf of Plaintiffs; Deputy Attorney General Kathleen M. Sato appeared on behalf of Defendants State of Hawaii ("State"), Claudio Suyat ("Suyat"), Fetulima Tamasese ("Tamasese"), and Mary Juanita Tiwanak ("Tiwanak") (collectively "Defendants").[1] After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Defendants' Motion for Summary Judgment and DISMISSES WITHOUT PREJUDICE the remaining state law claims, and further DENIES as MOOT Plaintiffs' Motion for Class Certification.

## BACKGROUND

This case centers on the interpretation of Haw.Rev.Stat. § 353–14 which provides in relevant part:

> Upon discharge or parole of any committed person who has undergone a commitment or sentence of more than one year, the committed person shall be furnished by the Hawaii paroling authority, with funds of not more than $200 and clothing sufficient to meet the committed person's immediate needs.

Haw.Rev.Stat. § 353–14.

Plaintiffs Phillip Reed ("Reed"), Lance Ruthe ("Ruthe"), Eric Yoshimura ("Yoshimura"), Cecilio Asuncion ("Asuncion"), and Frederick Curtis ("Curtis") (collectively "Plaintiffs") are former inmates who maintain that they were each released after sentence and commitment of more than one year, but were not given either cash and/or clothing specified under Haw.Rev.Stat. § 353–14 (hereinafter "gate money"). *See* Appendix A, attached to this order, for a synopsis of Plaintiffs' release dates, gate money received on each occasion, and the Defendants involved in that particular decision.

On November 14, 1995, Plaintiffs filed a complaint against Defendants alleging a vio-

---

1. On September 5, 1996, the parties stipulated to dismiss with prejudice Defendants George Ira- non and Eric Penarosa.

lation of their rights under 42 U.S.C. § 1983, the Fourteenth Amendment of the United States Constitution, the statutory requirements of Haw.Rev.Stat. § 353–14, as well as other various state law claims. In addition to filing suit against the State of Hawai'i, Plaintiffs also sued the current members of the Hawai'i Paroling Authority ("HPA")— Suyat, Tamasese, and Tiwanak ("HPA Defendants")—in their official and individual capacities. Plaintiffs have requested declaratory and injunctive relief, as well as actual and punitive damages.

Defendants have moved for summary judgment on the federal claims and subsequent dismissal of remaining state claims on the following grounds: (1) Plaintiffs' claims are barred by the statute of limitations; (2) Defendants are protected by the Eleventh Amendment; (3) HPA Defendants are entitled to absolute immunity and qualified immunity; (4) Plaintiffs were not deprived of their Fourteenth Amendment rights of due process or equal protection; and (5) supplemental jurisdiction is not warranted.

In their motion, Plaintiffs seek to certify their claims as a class action lawsuit on behalf of similarly situated persons.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270,

282 (9th Cir.1979). The opposing party can neither stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

## DISCUSSION

### I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### A. State of Hawaii—Eleventh Amendment Immunity

As a general rule, states cannot be made a party to a federal suit. *Harris v. Angelina County,* 31 F.3d 331, 339 (5th Cir.1994).

The Eleventh Amendment reads:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[2]

The Supreme Court has interpreted this Amendment to signify that "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed[.]" *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). According to the Supreme Court, the Eleventh Amendment acts as an absolute bar to suits in federal court against a state brought by its own citizens. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *Shaw v. California Dep't of Alcoholic Beverage Control,* 788 F.2d 600, 603 (9th Cir.1986).

A state may waive Eleventh Amendment immunity only by giving an "unequivocal indication" that it consents to suit in federal court. *Charley's Taxi Radio Dispatch v. SIDA of Hawaii,* 810 F.2d 869 (9th Cir.1987) (citing *Atascadero State Hosp. v.*

---

**2.** The Supreme Court has held that this provision bars suits against a state brought by its own citizens, as well as by foreign citizens. *Papasan*

*v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986).

*Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)). The Ninth Circuit explained that such indication may be found where (1) the state has expressly consented to federal jurisdiction in the context of the litigation; (2) a state statute or constitutional provision expressly provides for suit in federal court; or (3) Congress clearly intends to condition the state's participation in a program or activity on the state's waiver of immunity. *Id.* at 873; *Quern v. Jordan,* 440 U.S. 332, 333, 345, 99 S.Ct. 1139, 1141, 1147, 59 L.Ed.2d 358 (1979).

■ Although they acknowledge that states are generally immune from suit, Plaintiffs argue that the State waived its Eleventh Amendment immunity here through the enactment of Haw.Rev.Stat. § 353–14 and the State's Tort Claims Act, Haw.Rev.Stat. § 662–2 & 663–1. The court disagrees.

■ First, the State has not given "unequivocal indication" that it consents to suit in federal court. *Charley's Taxi Radio,* 810 F.2d at 873. Moreover, the statutes cited do not *expressly* provide for such suits against the State in federal court;[3] general claims of liability to enforce statutory provisions are insufficient to overcome Eleventh Amendment immunity. Finally, there is no Congressional mandate requiring waiver of state liability for the instant action. Finding no express consent or applicable waiver provisions here,[4] the court GRANTS Defendants' Motion for Summary Judgment as to claims against the State of Hawaii.

## B. HPA Defendants—Absolute and Qualified Immunity

HPA Defendants contend that the claims against members of the parole board are barred by the doctrine of absolute immunity.

HPA Defendants rely on *Anderson v. Boyd,* 714 F.2d 906, 908–909 (9th Cir.1983) and *Sellars v. Procunier,* 641 F.2d 1295, 1302–03 (9th Cir.1981) to argue that, like judges, parole officials are afforded absolute immunity from suit for discretionary, parole-related functions. They further implore the court to apply the recent Seventh Circuit holding in *Wilson v. Kelkhoff,* 86 F.3d 1438 (7th Cir. 1996) for the proposition that the parole board is accorded absolute immunity for activities that are "part and parcel" of the decision-making process.

Plaintiffs, on the other hand, argue that the doctrine of absolute immunity is much more limited in scope and does not encompass the HPA Defendants' gate money determinations in this case. Plaintiffs contend that gate money determinations are administrative and ministerial and therefore cannot be dismissed on immunity grounds.

### 1. *Absolute Immunity*

■ It is well-settled in the Ninth Circuit that parole board members enjoy absolute, quasi-judicial immunity from civil suits for actions taken when processing and deciding parole applications. *Anderson,* 714 F.2d at 908–09; *Sellars,* 641 F.2d at 1297. Absolute immunity has been accorded to legislators, to judges, and to those who perform judge-like or prosecutor-like functions within a federal agency. *Sellars,* 641 F.2d at 1297. When judicial immunity is extended to officials other than judges, it is because their judgment is functionally comparable to those of judges—that is, because they, too, "exercise a discretionary judgment" as part of their function ("functional comparability test"). *Antoine v. Byers & Anderson,* 508 U.S. 429, 435–36, 113 S.Ct. 2167, 2171–72, 124 L.Ed.2d 391 (1993). The touchstone for applicability

---

3. The State Torts Claims Act only waives state liability from suit for common law causes of action in tort. *See Cootey v. Sun Investment, Inc.,* 68 Haw. 480, 718 P.2d 1086 (1986). This does not apply to the instant case because the claims alleged here are not common law tort actions.

4. Without express consent to be sued or a deliberate waiver of immunity, the State is immune from suit for either actual damages or injunctive relief under the Eleventh Amendment.

As an added note, Eleventh Amendment immunity also applies to suits for damages against state officials in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 3104–06, 87 L.Ed.2d 114 (1985). However, because the doctrines of absolute quasi-judicial immunity and qualified immunity are more comprehensive, the court will turn to those doctrines first in evaluating the viability of Plaintiffs' claims against the HPA Defendants.

of the absolute immunity doctrine is whether the official seeking immunity for his/her actions is "perform[ing] the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Id.* The idea behind quasi-judicial immunity is to promote independent, unhampered judicial decision-making and to free the decision-makers from the constant fear of retaliatory suits. *Sellars,* 641 F.2d at 1300.

In *Sellars,* the Ninth Circuit held that parole officers are entitled to absolute quasi-judicial immunity when they "act, deny, or revoke parole." 641 F.2d at 1303. In *Anderson,* it further held that quasi-judicial immunity is applicable to the parole board's actions in imposing parole conditions and executing parole revocation procedures, but would not extend to the knowing dissemination of false information concerning a parolee. 714 F.2d at 909. The court noted that the latter was not directly related to the decision to revoke parole and therefore was not protected by absolute immunity. *Id.*

■ While parole board members have absolute immunity for their adjudicatory functions, they generally have only qualified immunity for the exercise of administrative functions. *See Antoine,* 508 U.S. at 436, 113 S.Ct. at 2172.[5] However, the Seventh Circuit recently held that parole board members are also absolutely immune from liability for acts that are "part and parcel" of the decision-making process. *Wilson v. Kelkhoff,* 86 F.3d 1438, 1445 (7th Cir.1996). The *Wilson* court found members of a prisoner review board

were absolutely immune from the due process claims alleging failure to provide adequate notice of the supervised release revocation hearing, failure to provide the plaintiff with an opportunity to present evidence and witnesses, and failure to adequately explain that the plaintiff's interview with a parole board member was in fact his final revocation hearing; the court granted immunity based on the fact that these claims were all integral to the decision-making process, and were quasi-judicial in nature. *Id.* at 1444–45.

■ In this case, section 353–14 is somewhat ambiguous as to the parameters of the gate money requirement.[6] Contrary to Plaintiffs' assertion, however, the gate money decision does not appear to be purely administrative and ministerial; the parole board members have extensive discretion in determining the committed person's immediate needs and the commensurate level of gate money required, if any. And in fact, the record indicates that the HPA Defendants and their predecessors made considered judgments on a case by case basis as to the parolee's needs and the award of gate money. *See* Defendants Motion, at 6–10, and Exh. D–1 through H–4. The gate money decision is therefore quasi-judicial in nature and of the type that should not be hampered by an apprehension of personal consequences. Furthermore, the decision to award gate money is "part and parcel" of the Board's quasi-judicial function of assessing the viability of parole.[7] Accordingly, the court finds

5. In *Antoine,* the Supreme Court held that although their tasks may be important or difficult, court reporters are not entitled to absolute quasi-judicial immunity because their duties are purely ministerial and administrative. 508 U.S. at 436–37, 113 S.Ct. at 2172. The Supreme Court placed great emphasis on the fact that the court reporters "are afforded no discretion in the carrying out of this duty." *Id.* at 436, 113 S.Ct. at 2172.

6. While on the one hand, the statute mandates that "the committed person *shall be furnished*" gate money, on the other hand, it states that gate money need only be dispensed in a manner and amount "sufficient to meet the committed person's immediate needs." Haw.Rev.Stat. § 353–14. Therefore, the only logical reading of this statute is that gate money "shall" be furnished to those inmates that the HPA finds "need" the

funds, and in the amount "necessary" to meet those needs.

7. Generally, the process of determining whether an inmate should be paroled begins two months prior to the expiration of the inmate's minimum term of imprisonment and includes the following steps: (1) Written notification is sent to the inmate, his or her attorney, and other relevant parties; (2) a pre-parole officer is assigned; (3) the pre-parole officer conducts an extensive interview of the inmate and collects and analyzes information regarding such things as the inmate's financial arrangements, employment plans, and residential or living arrangements; (4) the officer submits a report to the HPA Board which is carefully reviewed to determine whether parole is viable; (5) the Board conducts a hearing to allow the inmate and his/her attorney to address the Board, and raise any additional con-

that the HPA Defendants are shielded from Plaintiffs 42 U.S.C. § 1983 claims under the doctrine of absolute quasi-judicial immunity.

### 2. *Qualified Immunity*

However, even if the court were to find that the decision was ministerial, Plaintiffs' claims are nevertheless barred under the doctrine of qualified immunity. As demonstrated below, Plaintiffs fail to point to any law indicating to Defendants that the denial of gate money following full consideration of individual needs and a hearing of the inmate's financial situation violates any constitutionally protected rights; Plaintiffs' claim that they have been deprived of their Fourteenth Amendment rights to due process and equal protection is meritless.

The existence of qualified immunity is a question of law. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir.1993). Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity "generally turns on the 'objective legal reasonableness' of the action assessed in light of the legal rules that 'clearly established' at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39). Since it grants immunity from suit, qualified immunity is intended to "permit courts expeditiously to weed out suits which fail the test without requiring the defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

▪ There are essentially three basic inquiries to the qualified immunity test: (1) the identification of the specific right allegedly violated; (2) the determination of whether

that right was so clearly established as to alert a reasonable person to its constitutional parameters; and (3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue. *See Romero v. Kitsap County,* 931 F.2d 624, 627 (9th Cir.1991).

The Supreme Court has indicated that the right allegedly violated must be particularized:

[O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039 (citations omitted).

The Ninth Circuit expounded:

[T]he proper fact-specific inquiry under *Anderson* is not whether the law is settled, but whether, in light of clearly established law and the information available to him, a reasonable person in [the official's] position could have objectively believed his actions to be proper.

*Houghton v. South,* 965 F.2d 1532, 1534 (9th Cir.1992) (citations omitted).

▪ A plaintiff who seeks damages for a violation of constitutional or statutory rights bears the initial burden of proving that the rights allegedly violated were clearly established at the time of the alleged misconduct. *Houghton,* 965 F.2d at 1534; *Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3020–21, 82 L.Ed.2d 139 (1984). A court must examine the universe of statutory or decisional law to determine whether the right allegedly violated was clearly established. *Elder v. Holloway,* 510 U.S. 510, ——, 114 S.Ct. 1019,

cerns; (6) the Board issues a written decision as to parole and the award of gate money, if any.

*See* Defendants Motion, at 3–6.

1022, 127 L.Ed.2d 344 (1994). Qualified immunity is thus a "protective" rule which "provides ample support to all but the most plainly incompetent or those who knowingly violate the law." *Burns,* 500 U.S. at 494–95, 111 S.Ct. at 1944 (citation omitted).

### a. Due Process Claim

■■■ Plaintiffs claim that because Haw. Rev.Stat. § 353–14 used the word "shall be furnished" in discussing gate money, the gate money allowance is mandatory and thereby creates a property interest protected by 42 U.S.C. § 1983. The court disagrees.

■■■ Whether an expectation of entitlement is sufficient to create a property interest "will depend largely upon the extent to which the statute contains mandatory language that restricts the discretion of the [decisionmaker]." *Jacobson v. Hannifin,* 627 F.2d 177, 180 (9th Cir.1980). "[A] statute will create an entitlement to a governmental benefit either if the statute sets out conditions under which the benefit *must* be granted or if the statute sets out the *only* conditions under which the benefit may be denied." *Allen v. City of Beverly Hills,* 911 F.2d 367, 370 (9th Cir.1990) (quoting *City of Santa Clara v. Andrus,* 572 F.2d 660, 676 (9th Cir.), *cert. denied,* 439 U.S. 859, 99 S.Ct. 176, 177, 58 L.Ed.2d 167 (1978) (emphasis in original)).

In *Allen,* the court held that because of the broad discretion vested in the city to lay off the plaintiff "in the interests of the economy," the plaintiff has no constitutionally protected property interest in his employment. 911 F.2d at 371; *see also, Orange County Deputy Sheriffs v. Gates,* 716 F.2d 733, 734 (9th Cir.1983) (concluding that requirement of good cause prior to the denial of a former deputy sheriff's weapons certificate "does not create a constitutionally protected property interest, because it is not a significant substantive restriction on the basis for [the] agency's action"), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984). The

court finds *Allen* and *Orange County Deputy Sheriffs* compelling here.

Similar to the government's discretion in *Allen,* HPA Defendants in the instant case had broad discretion in assessing the Plaintiffs' need for gate money. Release on parole is not like the game of Monopoly where, if you pass "Go," you automatically collect $200. Rather, the Haw.Rev.Stat. § 353–14 only requires a payment of gate money where the HPA Defendants perceive that a parolee has an immediate need for funds and then only in an amount not to exceed $200. Noting that the HPA Defendants are given vast discretion in determining an inmate's need for gate money, the court finds that there is no constitutionally protected property interest in gate money. *Allen,* 911 F.2d at 371.

■■■ Moreover, Plaintiffs' reliance on the language of Haw.Rev.Stat. § 353–14 and the settlement agreement in a 1974 state class-action suit, *Kalua v. Thompson,* Civil No. 41915 (First Circuit Court of the State of Hawaii) (hereinafter "the *Kalua* settlement agreement"), for the proposition that they have an entitlement to gate money sufficient to warrant constitutional protection is misplaced. Neither the statute nor the *Kalua* settlement agreement strips the HPA of its discretion in awarding gate money; they only established guidelines which are to be followed in determining the award. Procedural requirements ordinarily do not transform a unilateral expectation into a protected property interest, unless they place a significant substantive restriction on decision making. *Wedges/Ledges of California v. City of Phoenix,* 24 F.3d 56, 62 (9th Cir.1994) (internal quotations and citations omitted). As previously indicated, there were no such restrictions on HPA Defendants as to the gate money determinations. The statute in question here provides the HPA Board with complete discretion to assess inmates' needs and to award gate money as necessary in light of those needs.[8] Haw.Rev.Stat. § 353–14.

---

8. The court notes that HPA's discretion goes to the determination of an inmate's need for gate money, not the disbursement of funds once that need is determined. *See* Haw.Rev.Stat. § 353–14.

HPA Defendants may not be entitled to absolute immunity where gate money was unreasonably delayed or denied to an inmate after there was a determination of immediate need, since disbursement under those circumstances

Thus the court finds no protected property interest existed here.

Finally, the right to gate money is not so fundamental as to warrant constitutional protection apart from its status under state law. *See Erdelyi v. O'Brien*, 680 F.2d 61, 63 (9th Cir.1982) ("Where state law gives the issuing authority broad discretion to grant or deny license applications in a closely regulated field, [ ] applicants do not have a property right is such license protected by the Fourteenth Amendment."). Thus, Plaintiffs fail to establish a clear violation of Plaintiffs' constitutional rights under the due process clause of the Fourteenth Amendment.

### b. Equal Protection Claim

Likewise, Plaintiffs fail to demonstrate any deprivation of equal protection under the law. Since Plaintiffs are not members of a suspect class and no fundamental rights are implicated, the court need only review their equal protection argument under the rational basis test. *See Heller v. Doe*, 509 U.S. 312, 318–20, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993). Under the rational basis test, the court must uphold the Parole Board's actions "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [Board]'s actions were irrational." *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979).

Here, the HPA Defendants' decisions regarding gate money in each Plaintiffs' case was based upon a full hearing, a pre-parole interview, preparation of a pre-parole report, and submission of all relevant evidence. The State has a legitimate interest in providing gate money for those inmates released on parole which demonstrate an immediate need for such funds or clothing. However, they also have a policy-based interest in ensuring that inmates who demonstrate no immediate needs do not receive a windfall at taxpayer's expense upon leaving prison. The court finds that the State's interest is legitimate and its reasoning is sound;[9] therefore, denial of gate money where the Parole Board determined that Plaintiffs had no immediate needs satisfies the rational basis test. Accordingly, the court determines that there is no equal protection violation here.

Finding that there is no evidence that indicates that HPA Defendants violated any clearly established rights in this case, the court alternatively GRANTS Defendants' summary judgment motion as to Plaintiffs' 42 U.S.C. § 1983 claims pursuant to the qualified immunity doctrine.[10]

### C. State Claims

Dismissal of the section 1983 claim leaves Plaintiffs with the following three state law claims: (1) alleged violations of § 353–14, (2) alleged violation of the 1974 *Kalua* settlement agreement, and (3) infliction of emotional distress claims. The court finds that the state courts would be better suited to address these issues of state law. Having dismissed the federal questions in the

---

is not discretionary under the terms of the statute. However, Plaintiffs have not set forth facts that demonstrate such a scenario. Instead, the record here indicates that Plaintiffs were only denied gate money following a hearing and determination by the HPA Defendants (or their predecessors) that there was no immediate need. *See* Appendix A.

9. Additionally, the court is not persuaded by Plaintiffs' argument that denial of gate money based on the funds in their institutional accounts is unconstitutional and contrary to legislative intent. While the legislature may not have intended to penalize Plaintiffs for working while in prison, a need-based entitlement program, such as the gate money statute, by its very mandate, requires consideration of Plaintiffs' earnings and bank reserves.

Welfare and veterans benefits provide a good analogy. Neither the welfare nor the veterans benefits program is intended to penalize people for working, but those who meet a certain income threshold are nevertheless ineligible to receive benefits under those programs. Similarly, the fact that an inmate who works in prison and has funds in his/her institutional account at the time of his/her release on parole is deemed ineligible for gate money is neither a violation of due process nor of equal protection.

10. Having conclusively dismissed Plaintiffs' federal claims under 42 U.S.C. § 1983, there is no need to further address Defendants' arguments for summary judgment based on the statute of limitations or Eleventh Amendment immunity for individual state officials.

instant case, the court declines to exercise supplemental jurisdiction [11] as to the remaining state law claims. *See* 28 U.S.C. § 1367(c) (1994). Accordingly, the court hereby DISMISSES the remaining state law claims WITHOUT PREJUDICE.

## II. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs have also moved for certification as a class action on behalf of similarly situated plaintiffs. Because the court dispositively granted summary judgment as to the federal questions, and subsequently dismissed the state law actions, the certification question is MOOT. Accordingly, the court DISMISSES as MOOT Plaintiffs' Motion for Class Certification.

## CONCLUSION

For the reasons stated above, the court GRANTS Defendants' Motion for Summary Judgment and DISMISSES WITHOUT PREJUDICE all remaining state law claims, and DENIES as MOOT Plaintiffs' Motion for Class Certification.

IT IS SO ORDERED.

### APPENDIX A

| PLAINTIFF | RELEASE DATE | GATE MONEY RECEIVED | DEFENDANTS PARTICIPATING IN DECISION |
|---|---|---|---|
| REED | March 14, 1991 | Following the parole hearing, gate money denied. Reed was released directly into residential rehabilitation program. Defs Motion, Exh. D–2. Reed received a check for $993.44 which reflected the balance in his institutional account. Decl of John Stewart; Defs Motion, Exh. D–3. | None |
| | October 29, 1992 | Ineligible: incarcerated for less than one year. | N/A |
| | August 3, 1995 (max. date) | Ineligible: incarcerated for less than one year. | N/A |
| RUTHE | August 1, 1989 | Received $200 in gate money. Defs Motion, Exh. E–2. | None |
| | January 8, 1992 | Received $200 in gate money. Defs Motion, Exh. E–3. | Suyat |

**11.** Supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367. Section 1367(a) provides that a district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a) (1994). Under § 1367(c), a court may decline to exercise supplemental jurisdiction if:

 (1) the claim raises a novel or complex issue of state law,

 (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

 (3) *the district court has dismissed all claims over which it has original jurisdiction,* or

 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)–(4) (1994) (emphasis added).

If a federal court declines to exercise its supplemental jurisdiction, the court may either dismiss the remaining state law claims or remand them to state court. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 348, 351–53, 108 S.Ct. 614, 618, 619–20, 98 L.Ed.2d 720 (1988); *Watkins v. Grover,* 508 F.2d 920, 921 (9th Cir.1974).

| | | | |
|--|--|--|--|
| | September 29, 1994 | Following the parole hearing, gate money was denied. Defs Motion, Exh. E–4. No immediate need determined. Ruthe received a check for $273.96 which reflected the balance in his institutional account. Defs Motion, Exh. E–5. | Suyat Tamasese |
| | October 26, 1995 | Released to Grace House (structured residence). Received $100 in gate money. Defs Motion, Exh. E–1. | Suyat Tamasese Tiwanak |
| YOSHIMURA | October 1990 | Received $200 in gate money. Defs Motion, Exh. F–1 and F–2. | None |
| ASUNCION | November 5, 1991 | Following a parole hearing, gate money was denied. Defs Motion, Exh. G–1. No immediate need determined. Asuncion received a check for $790.06 which reflected the balance in institutional account. Defs Motion, Exh. G–2. | Suyat |
| | May 18, 1995 | Following a parole hearing gate money was denied. Defs Motion, Exh. G–1. Asuncion had $197.88 in his institutional account. Prior to his release, Asuncion received a check for $154.41. Another check was issued later for the remainder. Defs Motion, Exh. G–3. | Suyat Tamasese |
| | November 5, 1998 (max. date) | N/A | N/A |
| CURTIS | March 16, 1987 | Following the parole hearing, gate money was denied. Defs Motion, Exh. H–1. No immediate need determined. Curtis received a check for $356.29 which reflected the balance in his institutional account. Defs Motion, Exh. H–2. | None |
| | November 19, 1992 | Following the parole hearing, gate money was denied. No immediate need determined. Curtis received a check for $1,724.22 which reflected the balance in his institutional account. Defs Motion, Exh. H–3. | Suyat |

| | | |
|---|---|---|
| April 4, 1996 | Following the parole hearing, gate money denied. Defs Motion, Exh. H–1. No immediate need determined. Curtis received a check for $637.54 which reflected the balance in his institutional account. Defs Motion, Exh. H–4. | Suyat Tamasese Tiwanak |
| May 10, 2006 (max. date) | N/A | N/A |