Michael T. SWIFT, Plaintiff–Appellant,

v.

State of CALIFORNIA; Department of Corrections; Keith Tandy, Defendants,

and

Steve Christian; Maritza Rodriguez, Defendants–Appellees.

No. 02–57136.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 2004.

Filed Oct. 5, 2004.

Before: T.G. NELSON, TASHIMA, and FISHER, Circuit Judges.

TASHIMA, Circuit Judge:

■ Michael Swift appeals the district court's dismissal of his 42 U.S.C. § 1983 action against two California parole officers. Swift alleges that his Fourth Amendment rights were violated as a result of: (1) the officers' investigation of suspected parole violations; (2) the officers ordering Swift's arrest pursuant to a parole hold; and (3) their recommendation for the initiation of parole revocation proceedings. The district court found the officers entitled to absolute immunity under *Sellars v. Procunier*, 641 F.2d 1295 (9th Cir.1981), and *Anderson v. Boyd*, 714 F.2d 906 (9th Cir.1983). We have jurisdiction pursuant to 28 U.S.C. § 1291 and conclude that the officers' right to immunity is not controlled by these cases. Applying the functional approach to absolute immunity in accordance with *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993), and *Miller v. Gammie*, 335 F.3d 889 (9th Cir.2003) (en banc), we hold that parole officers are not absolutely immune from suits arising from conduct distinct from the decision to grant, deny, or revoke parole. Accordingly, we reverse.

## BACKGROUND[1]

In February 1994, Swift was committed to the custody of the California Department of Corrections ("CDC") for a term of 16 months after being convicted of issuing a forged check in the amount of $114.80.

Jack H. Swift, Grants Pass, Oregon, for the plaintiff-appellant.

Richard F. Wolfe, Deputy Attorney General, State of California, San Diego, California, for the defendants-appellees.

---

1. Because Swift's claim was dismissed pursuant to Fed.R.Civ.P. 12(b)(6), "all well pleaded facts in the complaint must be taken as true."

*Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 595 (9th Cir.2004).

After completing his custody term, Swift was assigned to parole supervision in Iowa pursuant to the Interstate Parole Compact.

While on parole in Iowa, Swift was arrested on a charge of domestic violence. This fact was reported to the CDC Interstate Parole Supervision Unit ("IPSU"), which then suspended Swift's parole, issued a parolee-at-large arrest warrant, and reported the issuance of the warrant to the National Crime Information Center ("NCIC"). Swift was subsequently acquitted of the domestic violence charge. IPSU requested that the Iowa authorities conduct a *Morrissey*[2] hearing regarding the alleged domestic violence incident. Swift was again acquitted after the magistrate found only minor parole violations. Swift continued his parole in Iowa, and he was released from further supervision in January 1998. Results of the domestic violence trial, the *Morrissey* hearing, and the continuance and completion of supervised parole were reported to IPSU, but IPSU failed to advise the California Board of Prison Terms ("BPT") or NCIC, officially reinstate parole, or recall the NCIC warrant.

When Swift learned of the outstanding NCIC warrant, he contacted IPSU and requested that the warrant be recalled. He was directed to report to the CDC Parole and Community Services Division ("P & CSD") in Chula Vista, California. He presented himself to an agent there on April 18, 2001, and advised the agent of the invalidity of the warrant. The agent released Swift on his own recognizance.

Swift alleges that during the week after his release, Steve Christian, an IPSU parole agent, and Maritza Rodriguez, a supervising P & CSD parole agent, investigated his situation, jointly determined to seize him pursuant to a parole hold, and conspired to effectuate his arrest.

The P & CSD requested that Swift return to the Chula Vista office on April 23, 2001. When Swift returned, Rodriguez ordered the issuance of a parole hold based on the investigation by Christian, and Swift was arrested and delivered to the custody of the San Diego County Sheriff. Swift was held in the county jail for one week before being transferred to state prison where he was incarcerated until June 7, 2001.

Christian submitted an investigative report to the BPT and requested that the BPT issue an order for a revocation hearing. Swift alleges that Christian falsified this report by deliberately suppressing all exculpatory evidence relating to the results of the domestic violence trial, the *Morrissey* hearing, the continuance of Swift's parole in Iowa, and Swift's discharge of parole by Iowa. Swift alleges that the report falsely stated that Christian was unable to procure criminal trial records and that an employee of the Iowa Department of Corrections had informed Christian that Iowa had closed its interest in the case "due to Swift's poor adjustment to the community."

The BPT conducted a parole revocation hearing, in which Christian and Rodriguez did not participate. The BPT hearing officer discharged Swift's parole, dismissed the parole hold order, recalled the warrant, and ordered that Swift be released immediately. The hearing officer specifically determined that Swift's parole was discharged by operation of law on November 16, 1997.

After exhausting his administrative remedies, Swift filed an action in state court against the CDC,[3] as well as this action. Swift's operative federal complaint alleged

**2.** *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1971).

**3.** Swift's state case was dismissed and the dismissal affirmed on appeal. The California

one cause of action under 42 U.S.C. § 1983 and four state causes of action. Christian and Rodriguez moved to dismiss pursuant to Fed R. Civ. P. 12(b)(6), arguing, *inter alia*, that they are entitled to absolute immunity or qualified immunity.

The district court held, pursuant to *Sellars* and *Anderson*, that Christian and Rodriguez are entitled to absolute immunity from liability because the functions they performed were "associated with [Swift's] parole revocation hearing." The district court declined to address Christian and Rodriguez's alternative argument that they are entitled to qualified immunity, and dismissed the state causes of action for lack of supplemental jurisdiction. Judgment was entered in favor of Christian and Rodriguez, and Swift appealed.

### STANDARD OF REVIEW

We review *de novo* the district court's dismissal for failure to state a claim pursuant to Rule 12(b)(6). *Decker v. Advantage Fund, Ltd.*, 362 F.3d 593, 595–96 (9th Cir. 2004). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n, Inc. v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir.2002). "[W]e must determine ... whether the plaintiff can prove some set of facts in support of the claim that would entitle him or her to relief." *Broam v. Bogan*, 320 F.3d 1023, 1033 (9th Cir.2003).

### DISCUSSION

■ Although state officials are entitled to some degree of immunity from § 1983 damages actions arising from their official acts, "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v.*

*Reed*, 500 U.S. 478, 486–87, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). "[A]n official derives the appropriate degree of immunity not from his or her administrative designation but by the function he or she performs." *Anderson*, 714 F.2d at 908 (citing *Butz v. Economou*, 438 U.S. 478, 511–12, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)).

■ It is well established that state judges are entitled to absolute immunity for their judicial acts. *Pierson v. Ray*, 386 U.S. 547, 553–54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). "When judicial immunity is extended to officials other than judges, it is because their judgments are 'function-al[ly] comparab[le]' to those of judges— that is, because they, too, 'exercise a discretionary judgment' as part of their function." *Antoine*, 508 U.S. at 436, 113 S.Ct. 2167 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 n. 20, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)).

■ State "[o]fficials performing the duties of advocate or judge may enjoy [quasi-judicial] immunity for some functions ... but that protection does not extend to many of their other functions." *Miller*, 335 F.3d at 897. For example, a state prosecutor is entitled to absolute immunity when engaged "in activities intimately associated with the judicial phase of the criminal process," but is only entitled to qualified immunity when "performing investigatory or administrative functions, or [when] essentially functioning as a police officer or detective." *Broam*, 320 F.3d at 1028 (internal quotation marks omitted).

### I. Quasi–Judicial Immunity for Parole Officers

■ The Supreme Court has reserved deciding whether members of state parole

---

Court of Appeal held that the CDC was immune under state law from any tort liability for its actions in connection with supervision

of parole. *See Swift v. Dep't of Corr.*, 116 Cal.App.4th 1365, 11 Cal.Rptr.3d 406, 410 (2004).

boards have absolute quasi-judicial immunity for their official actions. *Martinez v. California*, 444 U.S. 277, 285 n. 11, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). We have held, however, that parole board members are entitled to absolute immunity when they perform "quasi-judicial" functions. *Anderson*, 714 F.2d at 909–10. Thus, parole board officials of the BPT are entitled to absolute quasi-judicial immunity for decisions "to grant, deny, or revoke parole" because these tasks are "functionally comparable" to tasks performed by judges. *Sellars*, 641 F.2d at 1303; *Bermudez v. Duenas*, 936 F.2d 1064, 1066 (9th Cir.1991) (holding *Sellars* immunity encompasses actions "taken when processing parole applications"). Absolute immunity has also been extended to parole officials for the "imposition of parole conditions" and the "execution of parole revocation procedures," tasks integrally related to an official's decision to grant or revoke parole. *Anderson*, 714 F.2d at 909.

■ We have also explained, however, that parole officials are not "entitled to absolute immunity for conduct not requiring the exercise of quasi-judicial discretion." *Id.* "There is no reason to clothe actions taken outside an official's adjudicatory role with the absolute immunity tailored to the demands of that role." *Id.* Thus, while parole officials "may claim absolute immunity for those actions relating to their responsibility to determine whether to revoke parole, their immunity for conduct arising from their duty to supervise parolees is qualified." *Id.* at 910; *see also Sepulveda v. Ramirez*, 967 F.2d 1413, 1415–16 (9th Cir.1992) (holding that a parole officer was not entitled to qualified immunity for depriving a woman of her clearly established due process right to bodily privacy by entering a bathroom stall and watching her urinate). *Anderson,* therefore, expresses the broad principle that, under a functional analysis, parole officials "may be accorded one degree of

immunity for one type of activity and a different degree for a discrete function." *Anderson*, 714 F.2d at 910.

## II. Appropriate Immunity for Christian and Rodriguez

Swift alleges that his Fourth Amendment rights were violated as a result of: (1) the officers' investigation of suspected parole violations; (2) the officers ordering the issuance of a parole hold and orchestrating Swift's arrest; and (3) their recommending the initiation of parole revocation proceedings.

■ Christian and Rodriguez bear the burden of proving their entitlement to absolute immunity. *Antoine*, 508 U.S. at 432, 113 S.Ct. 2167 ("The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity."). Their primary argument in support of absolute immunity is that *Anderson* decided this issue. The district court agreed, stating that "the Defendants' functions in the instant case are non-distinguishable from the functions the *Anderson* court held to be protected by absolute immunity."

### A. Effect of the Anderson Decision

We reverse for two reasons. First, *Anderson* expressly did not address the issue at hand. Second, *Antoine* forecloses Christian and Rodriguez's broad interpretation of *Anderson*. In *Anderson*, we considered what immunity should extend to the Chairman of the Oregon State Parole Board and the Assistant Director of the Oregon Interstate Compact. *Anderson*, 714 F.2d at 907–08. We held that the parole officials were entitled to absolute immunity for "the imposition of parole conditions" and for the decision to have a parolee "arrested and placed on parole holds pending investigation of purported parole violations." *Id.* at 909. We explained that when parole board officials

have a parolee arrested and placed on a parole hold, they are entitled to absolute immunity because"[t]hese actions [are] *directly related to* the decision to revoke parole." *Id.* (emphasis added).

We also held, however, that the officials were only entitled to qualified immunity for "the dissemination of information about a parolee to persons outside the parole board" because that conduct "does not *relate to* a parole official's duties in deciding to 'grant, deny, or revoke parole.'" *Id.* at 910 (quoting *Sellars,* 641 F.2d at 1303) (emphasis added).

Moreover, we explicitly did "not address the possibility of a distinction for purposes of immunity analysis between a member of a parole board" and a parole official with no role, or a lesser role, in the decision to grant, deny or revoke parole. *Id.*

California's parole system is effectuated by two "separate and distinct" entities, the CDC and the BPT: "the [CDC] is authorized to supervise parolees and to detain them pending a revocation hearing ... while the [BPT] makes the decision as to whether or not to revoke parole." *Swift,* 11 Cal.Rptr.3d at 410 (citing Cal. Pen.Code §§ 5000–5003, 5077 and Cal.Code Regs. tit. 15, § 2600). Whether parole agents of the CDC are entitled to absolute immunity thus raises the question reserved in *Anderson*: whether parole officials who play "no role ... in the granting or denying of parole[,] and only a preliminary role ... in a determination to revoke," are entitled to absolute immunity. *Anderson,* 714 F.2d at 910.

### B. Scope of Immunity for Parole Officers

Christian and Rodriguez contend that under *Anderson* and *Sellars* all parole officials are entitled to absolute immunity for actions that *relate to* the decision to grant,

deny or revoke parole. *See id.* at 909 (extending absolute immunity to actions "directly related to the decision to revoke parole"). We conclude that the scope of absolute immunity for parole officers is not as extensive.

First, *Anderson* itself does not support such a broad proposition. It limited immunity to acts *"directly* related to the decision to revoke parole." *Id.* at 909 (emphasis added). Moreover, it noted that parole officers are not entitled to absolute immunity for conduct "arising from their duty to supervise parolees," *id.* at 909–10, conduct that could include actions that would fall within the reach of Christian and Rodriguez's suggested test. Thus, on its face, *Anderson* limited immunity more than Christian and Rodriguez suggest.

Second, subsequent to *Anderson,* "[i]n *Antoine,* the Supreme Court worked a sea change in the way in which we are to examine absolute quasi-judicial immunity for nonjudicial officers." *Curry v. Castillo (In re Castillo),* 297 F.3d 940, 948 (9th Cir.2002). The relevant test now is whether the official is "performing a duty functionally comparable to one for which officials were rendered immune at common law." *Miller,* 335 F.3d at 897. Indeed, to the extent *Anderson* applied a "relates to" test, as opposed to a functional test, *Antoine* overruled it. Under *Antoine,* "[t]he relation of the action to a judicial proceeding ... is no longer a relevant standard." *Id.* As we have described above, *Antoine* adopted a functional approach, under which we must determine not whether an action "relates to" the decision to grant, deny, or revoke parole, as Christian and Rodriguez suggest, but whether an action is taken by an official "performing a duty functionally comparable to one for which officials were rendered immune at common law." *Id.*[4]

***

4. The majority of circuits addressing the scope of official immunity for parole officials

have held that when a parole officer is per-

*Antoine* thus forecloses Christian and Rodriguez's contention that *Anderson* stands for the broad proposition that quasi-judicial acts include all acts by any parole official that relate to the parole authority's decision to grant, deny or revoke parole. As we explained in *Anderson*, parole officers are not entitled to absolute immunity for conduct "taken outside an official's adjudicatory role[,]" or "arising from their duty to supervise parolees." *Anderson*, 714 F.2d at 909–10. Nevertheless, *Anderson* generally applied a functional test, and the case still dictates that an official who adjudicates parole decisions is entitled to quasi-judicial immunity for those decisions, and actions integral to those decisions.

## III. Christian and Rodriguez's Functions Here

Applying the functional analysis articulated in *Antoine* and *Miller*, we conclude that Christian and Rodriguez are not entitled to absolute immunity for their conduct while: (1) investigating parole violations, (2) ordering the issuance of a parole hold and orchestrating Swift's arrest, and (3) recommending the initiation of parole revocation proceedings.

### A. Investigation of Parole Violations

■ Under California's system of parole, a parole agent acts as a law enforcement official when investigating parole violations and executing parole holds. As CDC parole agents, Christian and Rodriguez were "peace officers" under California law. Cal.Penal Code. § 830.5. Both the California Supreme Court and the United States Supreme Court have ob-

served that as "peace officers," parole officers perform a "law enforcement function." *People v. Willis*, 28 Cal.4th 22, 40, 120 Cal.Rptr.2d 105, 118, 46 P.3d 898, 909 (2002) (quoting *Cabell v. Chavez–Salido*, 454 U.S. 432, 443–44, 102 S.Ct. 735, 70 L.Ed.2d 677 (1982)). Thus, parole officers "act like police officers" when they "seek to uncover evidence of illegal activity." *Scott*, 524 U.S. at 369, 118 S.Ct. 2014; *see Willis*, 28 Cal.4th at 41, 120 Cal.Rptr.2d at 119, 46 P.3d at 910 (explaining that when CDC parole officers investigate crimes they "act like police officers" (quoting *Scott*, 524 U.S. at 369, 118 S.Ct. 2014)).

■ We have held that prosecutors are not entitled to quasi-judicial immunity when "performing investigatory or administrative functions, or [when] essentially functioning as a police officer or detective." *Broam*, 320 F.3d at 1028. Given that prosecutors are not entitled to absolute immunity when performing investigatory or law enforcement functions, we hold that parole officers cannot be entitled to absolute immunity when performing the same functions. Therefore, since Christian and Rodriguez were performing a law enforcement function while investigating Swift's alleged parole violations, they are not entitled to absolute immunity for this conduct.

### B. Parole Hold and Arrest

■ In California, the issuance of a parole hold is an act by the parole agent that takes place independently of the parole decisional authority. *In re Law*, 10 Cal.3d 21, 23 n. 2, 109 Cal.Rptr. 573, 575 n. 2, 513 P.2d 621, 623 n. 2 (1973). The ability to issue a parole hold gives the

forming a law enforcement function, the officer is entitled to only qualified immunity. *See e.g., Johnson v. Rhode Island Parole Bd. Members*, 815 F.2d 5, 8 (1st Cir.1987) ("[T]he function of an arresting parole officer is more akin to that of a police officer ... such that the rationale for according that official abso-

lute immunity, as described previously by the Ninth Circuit [in *Anderson* ], is inapplicable to the parole officer."); *Scotto v. Almenas*, 143 F.3d 105, 112–13 (2d Cir.1998) (deciding issue after Supreme Court's decision in *Antoine* ).

parole officer "the power ... to have the parolee restrained merely by exercising his authority to take the parolee into custody and book him into a local jail." *Id.* When issuing a parole hold, or authorizing an arrest, a parole agent functions as a police officer. *See Johnson,* 815 F.2d at 8. Therefore, when Christian and Rodriguez ordered the issuance of a parole hold and arrest independently from the BPT's decision making authority, they performed a law enforcement function and are not entitled to absolute immunity for this conduct.

### C. Recommending Initiation of Parole Revocation Proceedings

 "An agency official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought[,]" and "should be able to claim absolute immunity with respect to such acts." *Butz,* 438 U.S. at 515, 98 S.Ct. 2894.

In *Miller,* we explained that a social worker's "decision to institute proceedings to make a child a ward of the state is functionally similar to the prosecutorial institution of a criminal proceeding" and "is likely entitled to absolute immunity." *Miller,* 335 F.3d at 898. By contrast, in *Scotto,* the Second Circuit reasoned that when a parole officer recommends that a senior official initiate parole revocation proceedings, the recommendation is not comparable to initiating a prosecution and is more analogous to "a police officer applying for an arrest warrant." *Scotto,* 143 F.3d at 112–13. The recommending officer is thus only entitled to qualified immunity, while the senior official who makes

the discretionary decision to issue the warrant is the one who initiates the revocation "prosecution" and is absolutely immune. *Id.* at 113.[5]

The issue in *Scotto* turned on an analysis of New York's regulations regarding the Division of Parole. Under the New York regulations, "if a parole officer believes that a parolee ... has violated a condition of his parole, 'such parole officer *shall* report such fact to a member of the board or a designated officer.'" *Id.* at 112 (quoting N.Y. Comp.Codes R. & Regs. tit. 9, § 8004.2(a)) (emphasis in original). Once the board receives the report, "[t]he member or designated officer *may* issue a warrant...." N.Y. Comp.Codes R. & Regs. tit. 9, § 8004.2(b) (emphasis added). Thus, while the regulations direct the parole officer to report what he believes to be a violation of a condition of parole, they give the board discretion as to issuing a warrant. The board, therefore, not the officer, plays a quasi-judicial role.

The California Code of Regulations establishes an analogous relationship between CDC parole agents and the BPT. "The P & CSD *shall* report to the board any parolee who is reasonably believed to" have committed certain enumerated violations. Cal.Code Regs. tit. 15, § 2616(a) (emphasis added). Once the report is forwarded to the BPT, "[t]he board *is authorized* to revoke parole in any case where the parolee has violated parole." *Id.* at § 2615 (emphasis added). Like parole officers under the New York regulations, parole officers under the California regulations must report parole violations, while the BPT is given the discretion to initiate the revocation proceedings.[6] *See id.*

**5.** The Eighth Circuit, similarly, explained that because "only the parole commission or one of its members, not a probation officer, can decide whether a parolee should be required to appear for an administrative proceeding," filing a probation violation report is functionally "akin to ... a police officer ... deciding whether there is probable cause for an ar-

rest." *Ray v. Pickett,* 734 F.2d 370, 374 (8th Cir.1984).

**6.** The regulations also include a catch-all provision, entitled "Behavior Which *May* Be Reported." Cal.Code Regs. tit. 15, § 2616(c) (emphasis added). This provision enables a parole officer to report, "[a]ny conduct which

("Parole violations ... must be reported to the board.").

Swift alleges that Christian and Rodriguez "request[ed] an order for a revocation hearing based upon falsified and suppressed evidence." Construing this allegation in the light most favorable to Swift, as we must, this statement parallels the regulations and suggests that Christian and Rodriguez performed a non-discretionary function, while another official made the discretionary prosecutorial decision to issue the order for a revocation hearing. We conclude that, like the parole officer in *Scotto*, Christian and Rodriguez's actions requesting that the BPT initiate revocation proceedings, were more akin to a police officer seeking an arrest warrant, than to a prosecutor exercising quasi-judicial discretion to initiate criminal proceedings. Thus, Christian and Rodriguez are not entitled to absolute immunity for recommending that the BPT initiate revocation proceedings.[7]

### CONCLUSION

On the basis of the foregoing, we conclude that Christian and Rodriguez are not entitled to absolute immunity. We therefore reverse the dismissal of Swift's federal claim. We also reverse the dismissal of Swift's supplemental state law claims because it was predicated on the dismissal of the federal claim. We do not reach Swift's alternative argument that Christian and Rodriguez acted beyond their jurisdiction, nor do we consider whether Christian and Rodriguez are entitled to qualified immunity, which should be addressed by the district court in the first instance.

**REVERSED and REMANDED.**

the parole agent ... *feels is sufficiently serious* to report, regardless of whether the conduct is being prosecuted in court." *Id.* (emphasis added). A parole officer acting under this provision would act with discretion, but his discretion would be regarding whether to report a violation to the board, not whether to revoke parole or even to begin the parole revocation proceedings. This action, again, would be "akin to ... a police officer ...

deciding whether there is probable cause for an arrest." *Ray*, 734 F.2d at 374.

7. Because this case is before us on appeal from a Rule 12(b)(6) motion, we accept as true the well-pleaded facts alleged in the complaint. *See* footnote 1, *supra*. We intimate no view on Christian and Rodriguez's entitlement to immunity, should the evidence show the facts to be other than as pleaded.