**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

OMAR SHARRIEFF GAY,
*Plaintiff-Appellee,*

v.

AMY PARSONS, Senior
Psychologist; GREGORY S.
GOLDSTEIN, Psychologist,
*Defendants-Appellants,*

and

JENNIFER SHAFFER, Secretary,
Board of Parole Hearings; CLIFF
KUSAJ, Chief Psychologist,
*Defendants.*

No. 21-16906

D.C. No.
3:16-cv-05998-
CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted November 14, 2022
San Francisco, California

Filed March 13, 2023

Before:  M. Margaret McKeown and Richard A. Paez,
Circuit Judges, and Donald W. Molloy,[*] District Judge.

Opinion by Judge McKeown

**SUMMARY**[**]

**Civil Rights**

In an action brought pursuant to 42 U.S.C. § 1983, the panel affirmed the district court's denial of absolute immunity to California Board of Parole Hearings psychologists who prepare comprehensive risk assessment reports for the parole board.

Plaintiff Omar Sharrieff Gay brought a civil rights suit alleging that he was asked racially and religiously biased questions in a psychological evaluation required for his parole review.  He claimed that the psychologists were prejudiced against him as an African-American, Muslim man, which influenced their conclusion that Gay presented a "high" risk of future violence.  The psychologists contended that they were absolutely immune from suit because they performed a discretionary function integral to the Board of Parole Hearings'("Board") quasi-judicial decision-making.

---

[*] The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Applying the functional approach laid out in the watershed case *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993), the panel declined to extend absolute immunity in this case. The panel held that the psychologists' assessments, while informative, were neither binding nor controlling in any way nor did the psychologists function in a judicial decision-making capacity. Thus, while the psychologists provided a risk level based on their clinical experience, they had no power of decision in the judicial sense; the psychologists were not members of the Board and the Board made its own determination about an inmate's current risk of dangerousness if released to the community. The panel did not address whether qualified immunity was available, leaving the question for the district court to consider.

## COUNSEL

Iram Hasan (argued) and Michael J. Quinn, Deputy Attorneys General; Neah Huynh, Supervising Deputy Attorney General; Monica N. Anderson, Senior Assistant Attorney General; Rob Bonta, Attorney General of California; Office of the California Attorney General; San Francisco, California; for Defendants-Appellants.

Alexandra S. Farley (argued), Carolee A. Hoover, and Kevin B. Frankel, McGuireWoods, San Francisco, California; Jamie D. Wells, Scale LLP, San Francisco, California; for Plaintiff-Appellee.

# OPINION

McKEOWN, Circuit Judge:

This appeal concerns whether California Board of Parole Hearings psychologists who prepare comprehensive risk assessment reports for the parole board are entitled to absolute immunity.[1]  Omar Sharrieff Gay brought a civil rights suit alleging that he was asked racially and religiously biased questions in a psychological evaluation required for his parole review.  He claimed that the psychologists were prejudiced against him as an African-American, Muslim man, which influenced their conclusion that Gay presented a "high" risk of future violence.  The psychologists contend that they are absolutely immune from suit because they performed a discretionary function integral to the Board of Parole Hearings' quasi-judicial decision-making.  The district court rejected their claim of absolute immunity. Applying the functional approach laid out in the watershed case *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993), we affirm.  The psychologists' assessments, while informative, were neither binding nor controlling in any way nor did the psychologists function in a judicial decision-making capacity.  This appeal does not address whether qualified immunity is available, which we leave to the district court.

---

[1] A review of the case law on absolute immunity for non-judicial personnel reveals that the terms "absolute immunity," "quasi-judicial immunity," and "quasi-judicial absolute immunity" have been used interchangeably.  For clarity, we follow the choice in *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993), and refer to the immunity at issue here as absolute immunity.

**BACKGROUND**

This case began with a parole eligibility interview. Omar Sharrieff Gay is an inmate in the custody of the California Department of Corrections and Rehabilitation. Gregory Goldstein and Amy Parsons (collectively, the "psychologists") were employed by the Board of Parole Hearings (the "Board") as a Forensic Psychologist and a Senior Psychologist, respectively. The psychologists interviewed Gay to prepare a Comprehensive Risk Assessment ("CRA") report for his parole suitability hearing. The report found that Gay posed a high risk for future violence.

Gay alleges that the psychologists discriminated against him because of his race and religion. Gay describes an evaluation conducted "in the manner of a military or police style interrogation." He claims that the psychologists asked him hostile questions and made prejudicial comments, including, "Why do you hate White People and Jews?" and "With everything going on in the world, at home with [Muslims], we don't know if you are just another radical Islamic terrorist." When Gay took offense at their "racially charged anti-Islamic questions" and asked if they would be asking those questions if he were a white Christian, Goldstein allegedly replied, "You're a high risk for violence with that sarcastic attitude."

Despite the relatively straightforward allegations, this case has a winding procedural history. In 2016, Gay filed a pro se complaint against the psychologists. Liberally construing the pleadings, the district court found that Gay properly raised equal protection and retaliation claims under 42 U.S.C. § 1983, and ordered the United States Marshal to serve process on the psychologists. The psychologists then

moved for summary judgment and claimed that they were entitled to qualified immunity. The district court denied summary judgment on Gay's equal protection claim, concluding that the psychologists were not entitled to qualified immunity "at this stage in the proceedings" but held that the psychologists were entitled to summary judgment and qualified immunity on the retaliation claim. *Gay v. Parsons*, 2018 WL 2088297, at \*5 (N.D. Cal. May 4, 2018).

The psychologists tried again, this time moving for judgment on the pleadings on Gay's equal protection claim, arguing that, as psychologists for the Board, they were entitled to absolute immunity. The district court denied the motion, explaining that immunity turned on whether the psychologists "exercised discretion functionally comparable to that of a judge" in preparing the CRA report, and that it could not make that determination on the pleadings. *Gay v. Parsons*, 2019 WL 3387954, at \*3 (N.D. Cal. July 26, 2019), *aff'd*, 810 F. App'x 552 (9th Cir. 2020). The psychologists appealed. We affirmed in a memorandum disposition and remanded the case to the district court, concluding that "Gay had alleged that [the psychologists] 'did not participate in the parole hearing—the most judge-like component of the parole process . . . but rather [they engaged in] a fact-gathering process similar to that of a police officer.'" *Gay v. Parsons*, 810 F. App'x 552, 553 (9th Cir. 2020).

Following remand, the parties developed a factual record on the CRA report process and its relationship to the Board's hearing. According to the record, the psychologists in the Board's Forensic Assessment Division prepare CRA reports for use in parole hearings. In doing so, the psychologists review the inmate's file, interview the inmate, and employ structured risk assessment tools used by mental health

professionals to determine the risk of violence in incarcerated individuals. Based on this information, the psychologists classify the inmate as a "low, moderate, or high risk of danger to society." The CRA report provides "circumstances about the crime, and the person's prior history and record," as well as "expert analysis" on risk assessment. The CRA report "does not substitute for the panel's determination of an inmate's current risk of dangerousness if released to the community." When asked in his deposition whether "the [Forensic Assessment Division] psychologist[s] decide whether the prisoner or the inmate has the right to go out on parole," Goldstein unequivocally replied, "No. We provide a risk assessment of violent risk. We don't make a determination, like, yeah, let this guy go, or, no, don't let this guy go."

After engaging in discovery, the psychologists moved for summary judgment on the basis that there was no genuine dispute of material fact that preparing a CRA report is a function entitled to judicial immunity as a matter of law. The district court denied the motion, agreeing with Gay that the psychologists "failed to demonstrate that preparing CRA reports involves a level of discretionary judgment comparable to that exercised by judges." *Gay v. Parsons*, 2021 WL 4806321, at *4 (N.D. Cal. Oct. 14, 2021).

## ANALYSIS

Under the collateral order doctrine, the district court's decision was immediately appealable. *See Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985). We review de novo whether a public official is entitled to absolute immunity. *See Brown v. Cal. Dep't Corr.*, 554 F.3d 747, 749 (9th Cir. 2009).

We begin by tracing the Supreme Court's principles and teachings on immunity. The Court has long connected the level of immunity to the nature of the official's role rather than title, explaining that "[j]udges have absolute immunity not because of their particular location within the Government but because of the special nature of their responsibilities." *Butz v. Economou*, 438 U.S. 478, 511 (1978). "It is the functional comparability of their judgments to those of the judge that has resulted in both grand jurors and prosecutors being referred to as 'quasi-judicial' officers, and their immunities being termed 'quasi-judicial' as well." *Id.* at 512 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976)).

The focus on judicial function is a common thread throughout the Court's immunity jurisprudence, although the language used to describe the inquiry has varied. In *Cleavinger v. Saxner*, 474 U.S. 193 (1985), the Court explained that it has "extended absolute immunity to certain others who perform functions closely associated with the judicial process." *Id.* at 200. But the Court has held that even judges do not always enjoy absolute immunity. In "attempting to draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges," the Court recognized once again that "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988) (denying absolute immunity to a judge acting in an administrative capacity).

By the time the Court decided *Burns v. Reed*, 500 U.S. 478 (1991), it cautioned that its "decisions have also emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified

for the function in question," and "[t]he presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Id.* at 486–87. Justice Scalia, in a partial concurrence and partial dissent, invoked history and dove into the categories of immunity at common law. *Id.* at 496–506 (Scalia, J., concurring in the judgment in part and dissenting in part). He distinguished judicial immunity, "an absolute immunity from all claims relating to the exercise of judicial functions," from quasi-judicial immunity, "official acts involving policy discretion but not consisting of adjudication." *Id.* at 499–500 (Scalia, J., concurring in the judgment in part and dissenting in part).

In *Antoine*, the Supreme Court returned to Justice Scalia's opinion in *Burns*, clarified its functional approach, and shifted the lens for evaluating judicial immunity. 508 U.S. at 435–38. In the Ninth Circuit opinion below, we relied on earlier precedent in concluding that court reporters were absolutely immune because "the making of the official record of a court proceeding by a court reporter is part of the judicial function," a step "inextricably intertwined with the adjudication of claims." *Antoine v. Byers & Anderson, Inc.*, 950 F.2d 1471, 1476 (9th Cir. 1991). The Court reversed our decision because it was "unpersuaded" that its "functional approach" to immunity shielded an officer just "because they are 'part of the judicial function.'" *Antoine*, 508 U.S. at 435 (quoting *Burns*, 500 U.S. at 486). Indeed, the Court held that "some of the tasks performed by judges themselves, 'even though they may be essential to the very functioning of the courts, have not . . . been regarded as judicial acts.'" *Id.* at 437 (alteration in original) (quoting *Forrester*, 484 U.S. at 228). Rather, the "touchstone" of the doctrine is the "performance of the function of resolving

disputes between parties, or of authoritatively adjudicating private rights." *Id.* at 435–36 (quoting *Burns*, 500 U.S. at 500 (Scalia, J., concurring in the judgment in part and dissenting in part)). "When judicial immunity is extended to officials other than judges, it is because their judgments are 'functional[ly] comparab[le]' to those of judges—that is, because they, too, 'exercise a discretionary judgment' as a part of their function." *Id.* at 436 (alterations in original) (quoting *Imbler*, 424 U.S. at 423 n.20).

Following *Antoine*, our court had the opportunity to address the Supreme Court's absolute immunity doctrine. In *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc), we reconsidered earlier circuit authority on immunity for social workers because the Supreme Court's revised approach was "fundamentally inconsistent with" our earlier reasoning. *Id.* at 892. The case concerned a social worker who informed the juvenile court of her proposed placement for a foster child with a known history of abusing other children. *See id.* at 893. The juvenile court approved the social worker's recommendations. *See id.* The plaintiffs alleged that the social worker failed to inform the court of critical facts, including that the selected foster home had young children who would be at risk of abuse by the foster child. *See id.* Acknowledging *Antoine*, we concluded that "actions taken with court approval or under a court's direction are not in and of themselves entitled to quasi-judicial, absolute immunity." *Id.* at 897 (citing *Antoine*, 508 U.S. at 435–36). Instead, we instructed the district court to consider whether the social worker made judicial or prosecutorial decisions that would have enjoyed common law immunity. *See id.* at 898. Importantly, we explained that "[t]o the extent, however, that social workers also make discretionary decisions and recommendations that are not

functionally similar to prosecutorial or judicial decisions, only qualified, not absolute immunity, is available." *Id.* We noted that "[e]xamples of such functions may include decisions and recommendations as to the particular home where a child is to go or as to the particular foster parents who are to provide care." *Id.*

Shortly after *Miller*, we decided *Swift v. California*, 384 F.3d 1184 (9th Cir. 2004), in which we described *Antoine* as "work[ing] a sea change in the way in which we are to examine absolute quasi-judicial immunity for nonjudicial officers." *Id.* at 1190 (quoting *Curry v. Castillo* (*In re Castillo*), 297 F.3d 940, 948 (9th Cir. 2002)). We clarified that "[t]he relevant test now is whether the official is 'performing a duty functionally comparable to one for which officials were rendered immune at common law.'" *Id.* (quoting *Miller*, 335 F.3d at 897). We acknowledged that "[t]he relation of the action to a judicial proceeding . . . is no longer a relevant standard." *Id.* (quoting *Miller*, 335 F.3d at 897) (alterations in original). Hence, we declined to extend absolute immunity to parole officers for "conduct distinct from the decision to grant, deny, or revoke parole." *Id.* at 1186. In doing so, we contrasted a social worker's "decision to institute proceedings to make a child a ward of the state," which is "likely entitled to absolute immunity," with "a parole officer recommend[ing] that a senior official initiate parole revocation proceedings." *Id.* at 1192 (quoting *Miller*, 335 F.3d at 898). Citing the Second Circuit's decision in *Scotto v. Almenas*, 143 F.3d 105 (2d Cir. 1998), we explained that while "the senior official who makes the discretionary decision to issue the warrant" is absolutely immune, the recommending officer was only entitled to qualified immunity. *Id.* (citing *Scotto*, 143 F.3d at 112–13). After clarifying the parameters of our absolute immunity

doctrine, we turned to the facts of *Swift*. There, the parole officers were required to report suspected violations of parole conditions to the board, but those officers were not decisionmakers. *See id.* at 1191. The board, however, had discretion to issue a warrant. *See id.* at 1192. We concluded that "[t]he board, therefore, not the officer, play[ed] a quasi-judicial role." *Id.*

Our understanding of *Antoine* and the distinctions made in subsequent precedent are illuminating here. In this case, the psychologists conduct objective assessments of inmates' risk of violent behavior, which they report to the Board. The psychologists, however, are not decisionmakers. Rather, it is the Board, not the evaluating psychologist, that has the discretion and authority to determine the inmate's eligibility for parole. While non-judicial "officials performing the duties of advocate or judge may enjoy quasi-judicial immunity for some functions," *id.* at 1188 (cleaned up), the psychologists were neither acting as advocates nor as judges.

The psychologists reviewed Gay's files, interviewed him, and looked to a multifactor risk instrument to reach a risk level recommendation. Their report, which was passed on to the Board, does not include a recommendation of whether an inmate should be released; it is instead a "tool" that the Board can use to guide its own determination. Though the psychologists emphasize that they exercise discretion in recommending a risk level of low, moderate, or high, *Miller* instructs that exercising some discretion is not enough where it is not functionally comparable to a judge's decision. *See* 335 F.3d at 897. While the psychologists provided a risk level based on their clinical experience, they "ha[d] no power of decision in the judicial sense." *Id.* at 898.

This is not to say that the reports were not helpful to the Board's decisions. Jennifer P. Shaffer, the Board's Executive Officer, called the assessments "invaluable information." But *Antoine* denied absolute immunity to court reporters who, "despite being 'indispensable to the appellate process,' do not exercise the sort of judgment for which there is quasi-judicial immunity." *Id.* (quoting *Antoine*, 508 U.S. at 437). The psychologists were not members of the Board and the Board "made its own determination" about "an inmate's current risk of dangerousness if released to the community." The psychologists' analysis was an information-gathering aid to the Board's decision, but not a judicial decision or even a parole recommendation itself. Adhering to the approach laid out in *Antoine*, *Miller*, and *Swift*, we decline to extend absolute immunity in this case.

We are not persuaded that our pre-*Antoine* decision in *Burkes v. Callion*, 433 F.2d 318 (9th Cir. 1970) (per curium), requires a different result. The psychologists ask us to recognize that *Burkes* remains good law or reaffirm it, as *Burkes* granted absolute immunity to psychiatrists who provided court-ordered reports to judges. *See id.* at 319. In *Burkes*, we reasoned that "[t]his circuit has repeatedly held that judges and other officers of government whose duties *are related to* the judicial process are immune from liability for damages under section 1983 for conduct in the performance of their official duties." *Id.* (emphasis added). The court-appointed psychiatrists who prepared and submitted medical reports to the state court acted within the scope of absolute immunity because that immunity "extend[ed] to acts committed in the performance of an integral part of the judicial process." *Id.* (internal quotation marks omitted).

Thus, the *Burkes* decision rested on a now-outdated test of "related to" the judicial process. That reasoning was categorically rejected in *Antoine*. *See* 508 U.S. at 436–37 ("Nor is it sufficient that the task of a court reporter is extremely important or, in the words of the Court of Appeals, 'indispensable to the appellate process.'" (quoting *Antoine*, 950 F.2d at 1476)).

As we made clear in *Swift*, to the extent our earlier case involving parole officers, *Anderson v. Boyd*, 714 F.2d 906 (9th Cir. 1983), "applied a 'relates to' test, as opposed to a functional test, *Antoine* overruled it." 384 F.3d at 1190. Stated succinctly, "*Antoine* adopted a functional approach, under which we must determine not whether an action 'relates to' the decision to grant, deny, or revoke parole . . . but whether an action is taken by an official 'performing a duty functionally comparable to one for which officials were rendered immune at common law.'" *Id.* (quoting *Miller*, 335 F.3d at 897). Intervening Supreme Court authority dictates the result in this appeal: "[W]here the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." *Miller*, 335 F.3d at 893.

Our recent decision in *Fort v. Washington*, 41 F.4th 1141 (9th Cir. 2022) does not change the calculus. The parties in *Fort* agreed that the Washington parole board was entitled to absolute immunity for its discretionary actions. *See id.* at 1144. Following our rationale in *In re Castillo*, 297 F.3d 940 (9th Cir. 2002), we confirmed that scheduling an inmate's parole hearing was "part and parcel of the decision process" and also warranted absolute immunity. *See id.* at 1145–46.

Both *In re Castillo* and *Fort* provide absolute immunity for administrative actions taken in the immediate leadup to the judicial action—the act of scheduling, without which there would be no hearing—on the theory that docket management is a part of the judicial function. *See Fort*, 41 F.4th at 1145. *Fort* noted that the parole board scheduled the hearing, and this administrative act taken by those same officials performing functionally comparable tasks to judges was "'inexorably connected'" with a judicial function." *Id.* at 1146 (quoting *Wilson v. Kelkhoff*, 86 F.3d 1438, 1444 (7th Cir. 1996)).

The psychologists argue that their risk assessment reports are also "part and parcel of the judicial process," insofar as the Board considers the risk assessment reports in deciding whether the inmate is safe to release into society. We disagree. This interpretation misreads *Fort*'s narrow question and would restore the overruled "relates to" test, an elastic band that could fit almost any circumstance.

In holding that the Board psychologists are not entitled to absolute immunity, we part ways with the Third Circuit in *Williams v. Consovoy*, 453 F.3d 173 (3d Cir. 2006). The Third Circuit did not address whether psychologists are exercising judge-like discretion in their evaluations to parole boards, instead reasoning that "the only way to ensure unvarnished, objective evaluations from court-appointed professionals is to afford them absolute immunity from suit for performing evaluations, regardless of whether those evaluations are ultimately found dispositive by the entity that requested them or are ultimately found lacking." *Id.* at 179. Though *Williams* postdates *Antoine*, the Third Circuit does not cite *Antoine*, relying instead on *Burns*—decided two years earlier—for the rule that "absolute immunity attaches to those who perform functions integral to the judicial

process." *Id.* at 178 (citing *Burns,* 500 U.S. at 484). Because *Antoine*—not *Burns*—provides the controlling standard, we decline to follow this approach.

The psychologists urge us to adopt the same policy reasoning as *Williams*, namely, that objectivity will suffer without absolute immunity. This argument ironically puts the psychologists in a position of hypothetically violating their professional principles and standards. *See* Am. Psych. Ass'n, *Ethical Principles of Psychologists and Code of Conduct* 4 (2017) ("Psychologists recognize that fairness and justice entitle all persons to . . . equal quality in the processes, procedures, and services being conducted by psychologists. Psychologists exercise reasonable judgment and take precautions to ensure that their potential biases, the boundaries of their competence, and the limitations of their expertise do not lead to or condone unjust practices."). But just as importantly, an abstract fear of vexatious litigation was not enough to persuade the Court in *Antoine* and it is not enough here. The Court in *Antoine* understood that cases against court reporters were "relatively rare," and the respondents in that case did not provide "empirical evidence demonstrating the existence of any significant volume of vexatious and burdensome actions against reporters, even in the Circuits in which reporters [were] not absolutely immune." 508 U.S. at 437. Similarly, the district court here found that the psychologists "offer no evidence 'of any significant volume of vexatious and burdensome actions against [them].'" *Gay*, 2021 WL 4806321, at *6 (quoting *Antoine*, 508 U.S. at 437).

Although we decline to extend absolute immunity to the psychologists, we emphasize that this is not game over. When the district court considered the psychologists' motion for judgment on the pleadings, it denied qualified immunity

"at this stage in the proceedings." We therefore leave the question of qualified immunity to the district court.

**AFFIRMED.**